VICKSBURG INFIRMARY *v.* HINES, Director General of Railroads, *et al.*

[98 So. 530.    No. 23677.]

(Division B.    Nov. 26, 1923.    On Suggestion of Error, Jan. 14, 1924.)

1. FRAUDS, STATUTE OF.    *Employer's agreement to pay hospital for treatment received by injured employee held original agreement.*
   Where an employee of a railroad company is received in a hospital for medical treatment, and continued services are rendered to such employee, at the special request of an authorized agent of the railroad company, and upon his promise that the company would pay for the services already rendered, as well as future services, and there is no evidence that the bill for such services was charged originally to the employee, such promise or agreement is an original one, having a consideration, and it is not void under the statute of frauds.

ON SUGGESTION OF ERROR.

2. RAILROADS.    *Director General not liable for medical services rendered employee before federal control.*

The Director General of Railroads was not liable for services ren·
dered railroad's employee by hospital prior to the time when the
President took possession and control of the railroad, pursuant
to his proclamation of December 26, 1917.

APPEAL from circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Suit by the Vicksburg Infirmary against Walker D.
Hines, Director General of Railroads, and the Yazoo &
Mississippi Valley Railroad Company.  Verdict and
judgment for defendants, and plaintiff appeals.  Af-
firmed as to defendant director general; reversed and
remanded as to defendant railroad.

*Brunini & Hirsch,* and *Anderson, Vollor & Kelly,* for
appellant.

If we sued on an open account and introduced the proof
to sustain it, and· the court held that there was no lia-
bility, we would not feel called upon to do more than
to state the facts.  This is all we shall do in this case.

Hardy was brought to the Vicksburg Sanitarium with
an infected· tooth.  Mr. Graves became exasperated at
the treatment and took Hardy from the Vicksburg Sani-
tarium to the Vicksburg Infirmary, about ten o'clock at
night.  Dr. Martin, in charge of the Vicksburg Infirm-
ary, knew nothing at all of Hardy's coming until he
found him in bed that night.  Hardy was unconscious
and the doctors seeing that something had to be done
immediately, operated and gave Hardy some relief.
Hardy continued at the institution for some days there-
after.  He had the benefit of special nurses both day
and night.  Mr. Doyle, the Y. and M. V. claim agent
told Dr. Martin to continue the treatment of Hardy, and
to keep the nurses on his case and that the railroad com-
pany would pay the bill.  Mr. Doyle also told Sam Hardy

that the company would pay the doctor's bill, and the hospital bill. This in the presence of Dr. Martin. After he got out of the hospital, he said again that he would pay the doctor's bill and the hospital bill. Dr. Martin testified that the claim agent, Mr. Harry Doyle, looks after the injured and sick for the railroad company.

We respectfully submit that this case should be reversed.

*Hirsh, Dent & Landau, Charles N. Burch* and *H. D. Minor,* for appellees.

The facts do not disclose that Hardy was carried to the infirmary by the railroad company, or that it assumed any obligation or made any promise to pay the infirmary bill of Hardy until Mr. Doyle appeared on the scene several days after a part of the bill was incurred. There was no promise made or assurance given at the time Hardy was admitted in the infirmary that his bill would be paid by the appellees. He was not placed therein at the request of the appellees, nor was he given credit at their instance or suggestion. Dr. Martin, actively in charge of the infirmary, knew that an employee of the Yazoo and Mississippi Valley Railroad was entitled to free treatment at the sanitarium and not at his infirmary. Hardy left the sanitarium of his own volition, selected the infirmary, and incurred the bill for treatment at the infirmary without the slightest suggestion, assent or approval of the railroad. Hardy had no authority to bind the appellees to pay his bill. 20 Cyc. 166.

If a verbal promise to pay the bill was made by Doyle, it is void under the statute of frauds. *Holmes* v. *McAllister,* 48 L. R. A. 396; *Fisher* v. *Kuhn,* 54 Miss. 480; *Hendricks* v. *Robinson, et al.,* 56 Miss. 694; *Thomas Mfg. Co.* v. *Prather,* 44 S. W. Rep. 218; *Millers* v. *Beaver Hill Coal Company,* 85 Pac. 502.

This is a case peculiarly within the statute of frauds and no recovery can be had on this verbal promise to pay Hardy's bill. The burden is on appellant to show that the claim agent had authority to make such a contract. Here there is no such evidence. *Busby* v. *Railroad,* 90 Miss. 13.

COOK, J., delivered the opinion of the court.

The appellant, Vicksburg Infirmary, instituted this suit against the director general of railroads for services rendered to one of the employees of the Yazoo & Mississippi Valley Railroad Company. At the conclusion of the testimony for the plaintiff a peremptory instruction was granted, directing the jury to return a verdict for the defendant, and from the verdict and judgment entered this appeal was prosecuted.

It appears from appellant's testimony that the Yazoo & Mississippi Valley Railroad Company has hospital arrangements with the Vicksburg Sanitarium for the medical treatment of its sick and injured employees, and Doctors Street and Street, who conduct this sanitarium, are the surgeons of said railroad company, and the company deducts from the monthly pay of its employees a hospital fee which entitles them to service at this sanitarium in case of illness or injury. One Sam Hardy, an employee of said railroad company, became seriously ill, and on the morning of June 30, 1917, he was carried to the Vicksburg Sanitarium by Mr. Graves, his foreman. The father of Hardy arrived in Vicksburg during the day, and went to the sanitarium to see his son. Hardy was dissatisfied with the measures taken for his relief at the sanitarium, and after he had been in the sanitarium about twelve hours he was moved to the Vicksburg Infirmary by his father and Mr. Graves. He arrived at the Vicksburg Infirmary about ten o'clock at night, in a semiconscious condition, and Dr. B. B. Martin, who was in

charge of the infirmary, operated on him, and took the necessary measures for his relief. He was placed in the care of special nurses, both day and night, and the bill for which this suit is brought was thereby incurred.

On the morning following the arrival of the patient at the infirmary, Dr. Martin instructed the superintendent of the infirmary to communicate with the claim agent of the railroad company, and ask him to come to the infirmary to make arrangements about the bill for the treatment of the patient. The claim agent was out of the city, and he did not come to the infirmary until the third day. The claim agent, Harry Doyle, visited the patient at the infirmary, and in the presence of the patient told Dr. Martin that the railroad company would pay the doctor's bill and the hospital bill. He also instructed Dr. Martin to continue the treatment of the patient and to keep the nurses on his case, and that the railroad company would pay the bill. The testimony of Dr. Martin was to the effect that this claim agent looks after the sick and injured for the railroad company; that formerly the Vicksburg Infirmary had been the railroad hospital; and that the claim agent was the one who usually had the railroad patients brought there.

The appellee contends that the oral agreement of the claim agent was not binding on the railroad because it was made without consideration, and it is void under the statute of frauds, and it was not shown that the claim agent of the company had authority to bind the railroad to pay the bill, a part of which had already been incurred when the promise was made.

We think the case of *Biglane* v. *Hicks* (Miss.), 33 So. 413, which is very similar in its facts to the case at bar, is decisive of the contention that the promise made by the claim agent is void under the statute of frauds, and was without consideration to support it. In that case Nannie Biglane, a daughter of Thomas Biglane, went to the

hospital at Vicksburg, and was received there for medical treatment, and stayed there for several weeks before her father knew anything about it.   Dr. Hicks, who treated her, then wrote him she was there, and of her condition, and thereafter Biglane called at Dr. Hick's office, and went with him to see his daughter.   He was informed of the charges for her treatment and hospital fees, and promised to pay it, and there was no evidence in the record as to whether or not the bill was ever charged to Nannie Biglane.   In the decision of that case the court said:

''There is no evidence in this case upon which it can be said that the debt here sued for was charged originally to Nannie Biglane, so as to bring into the decision of it the question of the statute of frauds.   If Thomas Biglane was not liable for the services here sued for, because they were rendered to a helpless member of his family, who sorely needed them, yet continued service and treatment of Nannie Biglane for several weeks by Dr. Hicks, at the special request of Thomas Biglane, upon his promise to pay for the services here sued for, as well as for future services, constituted a consideration to support this action.''

In the case at bar there is no evidence upon which it can be said that the debt here sued for was ever charged to Sam Hardy, but, on the contrary, it may be clearly inferred that it was not so charged, and consequently it does not come under the condemnation of the statute of frauds.

The evidence is clear that the service to and treatment of this employee of the company was continued for several weeks, at the special request of the claim agent of the railroad company, and upon his promise that the company would pay for the services already rendered, as well as future services, and this constituted sufficient consideration to support this action.

We think that appellant's testimony in regard to the authority of the claim agent to bind the railroad company to pay for the services rendered to this employee was sufficient to require the submission of the cause to the jury, and, consequently, that it was error to grant the motion to exclude this evidence and direct a verdict for appellee.

The judgment of the court below will therefore be reversed and the cause remanded.

*Reversed and remanded.*

ON SUGGESTION OF ERROR.

On a former day of this term the judgment in this cause, which was against both the Director General of Railroads and the Yazoo & Mississippi Valley Railroad Company, was reversed, and the cause remanded. The appellees now suggest that we erred in reversing the judgment as to the director-general of railroads, for the reason that the record discloses that the claim for which the suit was brought arose in the months of July and August, 1917, which was prior to the date the President of the United States took  possession and control of the railroad company. It appears that, pursuant to the proclamation of December 26, 1917, the President took possession and control of the Yazoo & Mississippi Valley Railroad Company on December 28, 1917, and, since the claim here involved arose several months prior to that time, the director general of railroads would not be liable therefor. *Missouri Pacific Railroad Co.* v. *Ault,* 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087.

As to the director general, the judgment of reversal will therefore be set aside, and the judgment of the court below will be affirmed; as to the Yazoo & Mississippi Valley Railroad Company, the suggestion of error is overruled.

*Sustained in part, and overruled in part.*