WADE *et al. v.* LONG.

(Division A. Jan. 1, 1934.)

[151 So. 564. No. 30923.]

Brown & Hartley, of Starkville, for appellants.

Daniel & Greene, of Starkville, for appellee.

McGowen, J., delivered the opinion of the court.

The appellee, Dr. Long, sued H. M. and Hugh Wade on an open account in a court of a justice of the peace where he recovered judgment, and the Wades appealed to the circuit court where the issue was tried, submitted to a jury, and a verdict for Dr. Long was rendered. The Wades prosecute an appeal to this court.

The facts necessary to state are these: Joe Wade became seriously ill and was carried by his physician to the hospital which belonged to Dr. Long. The suit is to recover the hospital bill, medical bill, and for services of Dr. Long rendered to Joe Wade while he was in the hospital. Joe was the son and brother, respectively, of H. M. and Hugh Wade.

On direct examination Dr. Long testified that the account was created and the services rendered at the instance and request of H. M. and Hugh Wade for and on behalf of Joe Wade, their kinsman, who was more than twenty-one years of age and who had been paying his

own bills for a long time. Upon this statement on direct examination the plaintiff in the court below had made out a case of liability. The conversation was denied by the Wades.

On cross-examination of Dr. Long the following evidence was adduced:

"Q. Doctor, if I understand you, the promise that Mr. Monk Wade made on the morning following the time that the boy was taken to the Hospital was that if the boy lived, he would pay it as he had enough property to pay it, and if he didn't live, that Mr. Monk Wade and Mr. Hugh Wade would see that it was paid? A. I am not positive that it was the first morning after the boy came there, but it was the first time that he came there to see him. That was the substance of what he said to me.

"Q. That is the promise that Mr. Wade made to you? A. They made it together. That was the agreement they made.

"Q. But you don't remember which one made that statement to you? A. All three of us were talking. It was agreeable to all three of us.

"Q. That was the promise that you relied on and that you brought this suit on? A. Yes, sir.

"Q. When you made that promise, you were holding Mr. Joe Wade liable for his account, and you figured that Mr. Monk Wade and Mr. Hugh Wade would be securities to see that it was paid? A. He was in the Hospital at that time, and it wasn't a closed agreement. A Hospital record isn't complete until the patient is discharged or dies. If the boy had gotten well, it would have been charged to Joe.

"Q. You were looking to them to pay it if Joe's property down here wasn't enough to pay it? A. I was looking to them to pay it if Joe died, and to him if Joe lived. If you will pardon me, I will answer that question you asked a while ago. You wanted to know

why these accounts came in here as they do. The book with that account in it was filled up. I had an old ledger there, and it was overlapping. This is a transcript of our revised account of the old book.''

It is insisted that the oral promise upon which this suit is based is within section 3343, Code 1930, which is in this language: ''Certain contracts to be in writing.— An action shall not be brought whereby to charge a defendant or other party: (a) Upon any special promise to answer for the debt or default or miscarriage of another person.''

It is also insisted that the court erred in refusing to grant the peremptory instruction requested by the appellants. The court below was evidently of the opinion that this agreement, quoted supra, was without the statute of frauds, in which view we think the trial court was in error. The peremptory instruction should have been granted—the agreement was within the statute of frauds. In effect, the agreement of the parties, who are sought to be bound here, was that if Joe lives he will pay the bill; if he dies, we will pay it. Dr. Long frankly testified that, if Joe had lived, the bill would have been charged to Joe Wade, the party primarily liable.

An account made out by the hospital was introduced in evidence, which shows that the bill had been charged to Joe Wade. There was no consideration passing from Dr. Long to H. M. and Hugh Wade. The promise was not in writing. The test as to whether or not the promise should be in writing is, Does the party originally liable for the debt continue liable? There was no release by Dr. Long of Joe Wade. He did not have even an absolute promise to pay the debt. It was contingent. While Joe lived he owed the debt. No consideration can be presumed by any sort of reasoning from the fact of Joe's death.

This case is ruled by Sweatman v. Parker, 49 Miss. 19, recently approved in the case of Allen v. Smith & Brand,

160 Miss. 303, 133 So. 599. Under the facts as stated, Joe Wade continued to be liable, and upon his death his estate, if he left any, could have been subjected to the payment of the debt. That being the case, the oral contract is not enforceable in view of the statute of frauds.

Appellee says that the case is on all fours with Biglane v. Hicks (Miss.), 33 So. 413, and Vicksburg Infirmary v. Hines, 134 Miss. 162, 98 So. 530. In each of these cases it was distinctly held that the oral promises there under consideration were substantiated by a direct absolute promise on the part of the parties sought to be bound and, in effect, a release of the party receiving the benefit of the promise. In the Hines Case there was a direct obligation on the part of the railroad primarily and originally to pay the bill, and the statement of facts so showed. We think neither of these cases is in point here.

Reversed, and judgment here for the appellants.