BARRY FUNERAL HOME *v.* NORRIS.

Feb. 9, 1953

No. 38667 19 Adv. S. 1 62 So. 2d 768

*Daniel, McKee & McDowell,* for appellant.

*Brown & Brown,* for appellee.

464

LEE, J.

Barry Funeral Home probated its claim for funeral expenses against the estate of L. T. Clinton, Jr., deceased. There was a contest by the administrator, and, upon final hearing, the court disallowed the claim. From the decree entered, the funeral home appeals.

On July 3, 1950, Nick Waters, in his automobile, struck and injured L. T. Clinton, Jr., a negro boy about four and a half years old. Waters took the child to a clinic where he died shortly afterwards. Waters, an undertaker himself, found out from L. T. Clinton, Sr., the boy's father, that he had no burial insurance and was without money, and thereupon contacted H. W. Barry of the Barry Funeral Home for the purpose of making arrangements for the burial. He and Barry agreed as to the type of the funeral, which would reasonably amount

to about $100.00, and that Waters would pay such expense. Waters made this agreement known to L. T. Clinton, Sr., and to J. D. Norris, who was subsequently appointed administrator.

Later Barry found out that Waters carried liability insurance on his car, and he decided that he could likely sell a more expensive funeral. To that end, the next day, he talked to J. D. Norris, the landlord of the Clintons. However, he admitted, on cross-examination, that Norris neither authorized nor agreed to pay therefor. Following this, Barry showed L. T. Clinton, Sr., the layout for the funeral but admitted he knew Clinton had no property and could not pay the bill. Both Clinton and Norris testified that they assumed no responsibility whatever for the funeral expenses.

At sometime during these negotiations and before the burial, Barry called Waters over the telephone and told of a conversation with the attorneys for the insurance company, in which the attorneys expressed the belief that the insurance company would pay the expenses, and that he was going to get paid for his regular service. Waters replied that such course would be all right with him, but, in that event, not to look to him further. The funeral as furnished aggregated $370.00, which included $175.00 for a casket and professional services, $175.00 for a steel vault, and the balance for clothes, flowers and a marker.

Appellant contends that the contract between it and Waters, if established, had no bearing on the liability of the estate; that the contract was within the statute of frauds; that it was vitiated by the subsequent action of the parties; and that the liability of the estate remains.

Appellee contends that Waters and Barry entered into a valid agreement whereby Barry was to furnish the type of funeral agreed upon and Waters was to pay the expense; that neither the father nor the estate subsequently assumed any liability for such expense; and that both the

father and the estate were fully released from any liability to pay such expenses.

 It is true that a father is under the duty to pay the funeral expenses of his minor child if he is able; and if he is not able, such expenses may be paid out of the property of the child. 21 Am. Jur., Executors and Administrators, Sec. 332, page 570.

 Funeral expenses are not a debt of the decedent, but constitute an obligation of the administrator, and may be paid as a part of the costs of administration. Dobbs v. Chandler, 84 Miss. 372, 36 So. 388; Gaulden v. Ramsey, 123 Miss. 1, 85 So. 109; Tom E. Taylor Undertaking Co. v. Smith's Estate, 183 Miss. 45, 183 So. 391.

 But a third person may, by oral contract, assume the payment of the funeral expenses of another and such contract does not fall within the purview of the statute of frauds. See 49 Am. Jur., Statute of Frauds, Section 103, page 455, where it is said: ''The well-established rule is that a promise to pay the funeral expenses of another is not a promise to answer for the debt of another where the undertaking is that the promisor shall be primarily responsible and credit is extended solely to him.'' See also annotations in 134 A. L. R. 634.

The same principle of law was applied in Biglane v. Hicks, (Miss.) 33 So. 413, where it was held that Biglane's oral promise to pay the charges and hospital fees for the treatment of his daughter, when there was no evidence as to whether or not the bill was ever charged to the daughter, was not void under the statute of frauds, and that he was liable therefor.

Of like effect is the case of Vicksburg Infirmary v. Hines, Director General of Railroads, 134 Miss. 162, 98 So. 530, the first syllabus of which is as follows: ''Where an employee of a railroad company is received in a hospital for medical treatment, and continued services are rendered to such employee, at the special request of an authorized agent of the railroad company, and upon his promise that the company would pay for the services

already rendered, as well as future services, and there is no evidence that the bill for such services was charged originally to the employee, such promise or agreement is an original one, having a consideration, and it is not void under the statute of frauds." Compare also Greenwood Leflore Hospital Com. v. Turner, 213 Miss. 200, 56 So. 2d 496.

■■ On the disputed issues of fact, in our opinion, the learned chancellor had ample evidence to sustain his findings that a valid contract was entered into between Waters and Barry whereby Waters promised to pay the funeral expenses and became primarily responsible therefor and Barry accepted this promise and extended credit solely to Waters; that the contract was not within the statute of frauds; and that the estate was released from any liability for the funeral expenses. The conclusion of the court was also fortified with proof that neither Clinton, the father, nor Norris, the subsequent administrator, authorized or assumed liability for the funeral expenses after Barry sought a rescission of his contract with Waters.

It follows that the decree of the lower court ought to be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington* and *Lotterhos, JJ.,* concur.