RICH *v.* SWALM.

(Division B. Oct. 26, 1931.)

[137 So. 325. No. 29486.]

**J. N. Yawn** and **P. Z. & R. L. Jones,** all of Brook-haven, for appellant.

Brady, **Dean** & **Hobbs**, of Brookhaven, for appellee.

510

Argued orally by **J. N. Yawn** and **R. L. Jones**, for appellant, and by **Tom Brady**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant, desiring to engage in the business of operating a private boarding house, entered into negotiations with appellee for the lease of a certain residence, suitably located and owned by appellee. This was in February, 1929. Appellee expressed his willingness to lease the premises to appellant for the monthly rental of thirty-five dollars. Appellant had examined the house and premises, and, finding same in poor repair, she stated to appellee that, in view of the condition of the house, she could not pay so much as thirty-five dollars per month, but would pay thirty dollars, whereupon appellee stated and agreed that, if appellant would lease the premises at thirty-five dollars, appellee would repair and paint the house, put it in first-class condition, and keep it so,

which agreement appellant accepted, and she paid, and continued to pay, the rent at thirty-five dollars per month. Except for "fixing the water" in the kitchen and the repair of a screen door, appellee did nothing about the repairs. This continued until July 12, 1929, on which date an elderly boarder was injured by the giving way of the banisters on the front steps. Immediately upon this occurrence appellant reported the same to appellee, and stated to him that, unless he would immediately make the repairs to the property as agreed, she would have to make other arrangements. Appellee thereupon renewed his agreement and assurance, stating that, if appellant would remain in the tenancy, he would proceed to the repairs. Nevertheless nothing was done by appellee, and on August 25, 1929, while appellant was attempting to sweep the front porch and in leaning over against the porch banisters in order to complete the sweeping, the porch banisters at that point gave way, throwing appellant to the ground and breaking her arm. Suit was filed by her against appellee to recover damages for the personal injury aforesaid, upon the hearing of which suit the trial court granted a peremptory instruction in favor of appellee.

The above is a sufficient statement of the facts, when it is added that it is not shown that the landlord had any knowledge of any specific or particular dangerous place on or about the premises, or, in fact, that any part was actually dangerous other than perhaps the front steps banisters; or that he had agreed in respect to any such specific or particular repairs. His contract was to repair generally.

There is the notion generally prevailing in the popular mind that a landlord occupies a position similar to that of a master, and that, as the master must furnish his servant with a safe place to work, so must the landlord furnish his tenant with a safe place to live, or else the notion is that the landlord is in a position of superiority, and

that the general principles of respondeat superior should apply. But, in the absence of statute, the rule of law is universal that a simple lease of a dwelling or other private premises carries no obligation whatever upon the landlord to repair, if there be no deceit or misrepresentation, or the equivalent thereof, by the landlord. The lessee takes the premises as he finds them, and he must return them as nearly as possible in like condition. Jones v. Millsaps, 71 Miss. 10, 14 So. 440, 23 L. R. A. 155. Or as has been expressed in a discriminating annotation on this subject, 8 A. L. R. page 766: "Where the right of possession and enjoyment of the leased premises passes to the lessee, the cases are practically agreed that, in the absence of concealment or fraud by the landlord as to some defect in the premises, known to him and unknown to the tenant, the rule of caveat emptor applies, and the tenant takes the premises in whatever condition they may be in. . . . This doctrine is in harmony with the common-law rule that a lease is a conveyance of an estate or an interest in real property, or a transfer of the right to the possession and enjoyment of real property for a specified period of time, or at will. In other words, it is a demise of real property for a limited period of time. So far as concerns the condition of the premises, the relation created by a lease is substantially similar to that created by a deed or a contract for the sale of real property with the right of possession."

There being, therefore, no obligation on the part of the landlord to repair as a result of a simple lease of the premises, the mere fact that he remains the owner of the remainder of the estate, less that granted by the lease, imposing upon him no greater obligations in respect to repairs than if that estate were the property of a stranger to the contract of lease, then it must follow as a logical consequence that, when the landlord makes a contract to repair the premises, his obligations under said contract to repair are no greater than, nor anything differ-

ent from, the obligations that would be incumbent upon a stranger or independent contractor who had contracted to make the repairs, and the liability for a failure to execute the contract would be exactly the same as that which a stranger-contractor would incur. The obligation would therefore be one not at all imposed by law, but would be purely contractual, and the liability for nonperformance would be, not upon negligence or in tort, but upon breach of contract.

The obligation being purely contractual, and the liability being not in tort but upon breach of contract, the rule of liability is that which was long ago announced in the case of Hadley v. Baxendale, 9 Exch. 341, 2 C. L. R. 517 and which has been adopted and repeatedly reaffirmed in this state, as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either as arising naturally, i. e., according to the usual course of things, from said breach of contract itself, or such as may be reasonably supposed to have been in the contemplation of the parties at the time they made the contract as the probable result of a breach of it."

The damage or injury must be such as would arise naturally according to the usual course of things, or else it must have been contemplated as a probable result of the breach. The rule, therefore, does not embrace extraordinary events or those which may possibly happen; but only those which are natural or probable. And thus we arrive at the question here in hand: Does the failure of a landlord to perform his contract to repair make him liable for personal injuries resulting from the want of repair? Or to put the question that is the more exactly before us: Does the failure of a landlord to perform his contract to repair the premises generally, as distinguished from specific repairs undertaken to be made,

render him liable for personal injuries occurring at any place on the premises which happens to be out of repair?

Whatever the persuasiveness with which the affirmative of that question would appeal to the individual mind as being the more agreeable to a sense of abstract justice, we think the judicial answer must be in accordance with long-settled legal principles and according to the manner in which the definite preponderance of judicial opinion throughout the country has applied those principles to a specific question upon which so much of the maturity of legal wisdom has been brought to bear as there has been upon the question here to be again answered. The exact legal issue has never been decided by this court, but it has been under review in nearly every state in the Union, and the great weight of authority has responded that personal injuries are too remote to be included in an action for breach of covenant to generally repair; that such an injury is not a natural or probable consequence which ordinarily and reasonably could be anticipated from a breach of covenant to generally repair; that, in order to recover such damages, there must be shown some act of negligence or misfeasance, beyond the mere breach of the covenant to repair.

We do not attempt to cite the hundreds of cases with which the books abound on this identical question. The citations from textbooks and the wealth of cases mentioned in the able briefs of counsel in this case will be found in the synopsis of their briefs, printed in the official reports. We draw this opinion to a close with a quotation from Thompson v. Clemens, 96 Md. 196, 53 A. 919, 921, 60 L. R. A. 580: "It is impossible in an opinion of anything like a reasonable length to undertake to discuss the numerous cases on that subject, and it would be useless to attempt to reconcile the expressions used in many of them. We have no doubt, however, that no action, either in contract or in tort, by a tenant, or one of his family, against a landlord, to recover damages for

personal injuries, should be sustained merely because the latter has been guilty of a breach of contract to make necessary repairs in the premises demised."
Affirmed.