FORD *v.* PYTHIAN BONDHOLDERS PROTECTIVE COMMITTEE et al.

No. 39408          March 28, 1955          78 So. 2d 743

632

*Witherspoon & Bourdeaux,* Meridian, for appellant.

*Snow & Covington,* Meridian, for appellees.

Kyle, J.

David J. Ford, as plaintiff, filed suit in the Circuit Court of Lauderdale County against the Pythian Bond-holders Protective Committee and others, defendants, for damages for personal injuries. The case was tried at the June 1953 term of the court, and the jury returned a verdict for the defendants. The plaintiff filed a motion for a new trial, which was overruled; and from the judgment rendered in favor of the defendants the plaintiff has prosecuted this appeal.

The declaration alleged and the proof showed, that the plaintiff was the manager of the Meridian branch office of the Monroe Calculating Machine Company, Incorporated, and occupied Room No. 211 of the Pythian Office Building in the City of Meridian, which was owned by the defendants. The lease contract entered into between M. A. Pigford, manager of the office building, as lessor, and the Monroe Calculating Machine Company, Incorporated, as lessee, was dated October 30, 1948, and covered a term of the five years, beginning November 1, 1948, and provided for the payment of a monthly rental of $35 for the use of the office room No. 211 in the office building. The plaintiff was sent to Meridian on April 20, 1951, to take over the management of the Meridian branch office of the company. On September 4, 1951, the plaintiff sustained serious injuries to the left arm and wrist when a large part of the pane of glass in the lower sash of the west window in Room 211 fell upon him while he was attempting to raise the sash for

ventilation. The pane of glass was approximately 42 inches square. As a result of the injury the plaintiff incurred medical expenses in the sum of $550, and suffered great physical pain, and according to the medical testimony was permanently disabled by a partial loss of the use of the left hand and forearm.

The plaintiff alleged in his declaration that the lower sash of the window holding the glass was rotten and deteriorated; that the lower corners of the sash were covered by pieces of tin which concealed the corner joints where they were mortised together in their defective and rotten condition, and that the hidden defects in the sash were not apparent to the plaintiff when he undertook to raise the window; that the defendants negligently failed to warn the plaintiff of the defective and dangerous condition of the window sash, which was concealed by the pieces of tin covering the lower joints of the window sash and that the defendants negligently failed in their duty to keep the window in proper repair after due notice and as they had agreed to do in the contract; and that the defendant's negligence as stated above was the proximate cause of the plaintiff's injuries.

A copy of the lease contract was attached to the declaration. The provisions of the contract relating to repairs are as follows:

"The lessee hereby agrees with the lessor as follows:

" *  *  *

"2. To make no repairs or alterations on the premises without the written consent of the lessor.

" *  *  *

"5. To permit the lessor to enter and inspect the premises and make such repairs as may be deemed necessary by him.

"Minor surface repairs within space demised exclusively to lessee to be done by lessee; other repairs and changes, as required, to be done by lessor. Landlord shall make whatever structural changes, structural re-

pairs, or repairs of structural defects as may be required.''

The defendants in their answer denied that there was any privity of contract between the plaintiff and the defendants. The defendants denied that the window had any defects, open or concealed, asserting that the sash was of substantial construction and in proper order; and the defendants denied that the pieces of tin on the lower joints of the sash were for the purpose of holding it together or that the pieces of tin concealed any rotten or defective condition; and the defendants denied that the plaintiff's injuries were caused by any negligence or any concealment on the part of the defendants.

The appellant testified that there were two windows in Room No. 211, one window facing southwardly and one window facing westwardly. A piece of tin covered the right-hand corner of the lower sash of the west window. The tin ran around the bottom of the sash and up the outside of the window. The appellant testified that there were no angle irons on the window at the time of the accident. The appellant stated that when he entered the office about 9:00 o'clock a. m. on September 4, 1951, he took hold of the handles of the lower sash of the window and started to raise it. He got the sash up a short distance and the pane of glass fell out and struck him on the head. A large portion of the glass then fell across his left wrist and cut the wrist to the bone. There was profuse bleeding. The medical testimony showed that the median nerve was severed, and the use of the thumb, forefinger, middle finger and the ring finger was permanently impaired as a result of severing of the nerve. The appellant testified that after the accident occurred Pigford had carpenters piece the angle irons on the lower sash. The appellant admitted that he had opened and closed the window many times and had never discussed the condition of the window with Mr. Pigford prior to the accident. Photographs which were taken several months after the accident were later

offered in evidence which showed angle irons around the lower corners of the window.

Robert L. Daniels, Jr., who worked for the Monroe Calculating Machine Company prior to April 23, 1951, and Robert M. Caldwell, who was an employee of the company during the year 1951, testified that the glass pane in the west window had been blown out by the wind in March 1951, and when the glass was replaced the tin was put on the lower right-hand corner of the sash. Daniels stated that there were no angle irons on the sash at that time but that he had no further trouble with the window thereafter. Caldwell stated that he could not recall a piece of tin being there prior to that time, and that he did not recall that there were angle irons on the window prior to Ford's accident.

M. A. Pigford testified that the glass pane in the west window was never broken before the Ford accident, but he had had braces (angle irons) put on the west window in March 1951 after the sash in the south window had been blown out by a windstorm. Mr. Daniels was using the office at that time. He stated that the strip of tin or corrugated iron had been there since he took charge of the building in 1947. He stated that the wood of the sash was in sound condition at the time the angle irons were put on in March 1951 and was still in a sound condition at the time of the trial. He had had no information that the mortised joints in the lower sash of the window were unsound. Lonnie Flay McKee testified that he replaced glass in the window after the Ford accident; that the sash was made of wood, with angle irons on both corners. He did not examine the wood under the angle irons, but the angle irons and fastenings were tight. Henry Parker testified that he installed the angle irons on the west window in March 1951. He inspected the corners where he installed the angle irons with screws, in order to see if the screws would hold or pull out, and he found that the woodwork was in good condition, and the screws would not pull out.

The appellant's attorneys have assigned many errors as ground for reversal on this appeal, but the most important points argued in their briefs relate to the action of the court in refusing to grant certain instructions as to the defendants' legal liability requested by the appellant and the granting of the defendants' instructions as to their legal liability.

The court refused to grant the plaintiff's instructions numbered 4, 5, 6, 8, 10, 16 and 17.

In the plaintiff's instruction No. 4, the court was requested to instruct the jury that the defendants were under the duty to keep the office located at 211 Pythian Building in proper and reasonably safe repairs. In the plaintiff's instruction No. 5, the court was requested to instruct the jury that the defendants were under a duty to keep the premises "in good repair," and that if the jury believed that the defendants negligently failed to keep the premises in good repair and that such failure was the proximate cause of the plaintiff's injury, the jury would find for the plaintiff. In the plaintiff's instruction No. 6, the court was requested to instruct the jury that the defendants were under duty to make repairs on the premises, and if the jury believed that the defendants negligently failed to make such repairs in a workmanlike manner and that the plaintiff's injuries were caused by the defendants' negligence in making repairs in a workmanlike manner, the jury should find for the plaintiff. In the plaintiff's instructions No. 7 and No. 8, the court was requested to instruct the jury that, if they believed from the evidence that the defendants knew or should have known that the west window in Room No. 211 was in need of repairs and that they failed to make such repairs, and that the failure to make such repairs was the proximate cause of the plaintiff's injury, the jury would find for the plaintiff.

In the plaintiff's instruction No. 10, the court was requested to instruct the jury that a landlord is subject to liability for bodily harm caused to his tenant and

others upon the premises with the consent of the tenant by a condition of disrepair existing before or arising after the tenant has taken possession, if the landlord as such has agreed by a covenant in the lease or otherwise to keep the premises in repair and the disrepair creates an unreasonable risk to persons upon the premises which the performance of the landlord's agreement would have prevented. In the plaintiff's instruction No. 16, the court was requested to instruct the jury that, if they believed from a preponderance of the evidence that the proximate cause of the plaintiff's injury was the defendants' negligence in safeguarding the west window of his office and allowing it to remain in a state of disrepair which resulted in the window pane falling out and cutting the plaintiff's arm, it was the duty of the jury to find for the plaintiff. The plaintiff's instruction No. 17, which the court refused to grant, would have told the jury that they should find for the plaintiff, if they believed that the failure of the defendants to repair the window in a workmanlike manner after being warned by Daniels and Caldwell that the window was unsafe, was the proximate cause of the plaintiff's injury.

It is the appellant's contention that the principles of law that should be applied to the facts in this case are the principles set forth in American Law Institute's Restatement of the Law of Torts, Vol. 2, Sections 357 and 362, which are as follows:

"Section 357. A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sub-lessee by a condition of disrepair existing before or arising after the lessee has taken possession, if (a) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented. * * * ."

"Section 362. A lessor of land, who by purporting to make repairs thereon while the land is in the possession of the lessee or by the negligent manner in which he has made such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or a sub-lessee.  *  *  *  ."

It is admitted that this Court has not adopted the principles of law as set forth in the A. L. I. Restatement. But it is insisted that the Court should adopt those principles, which represent the more modern view of the landlord's duty to make repairs and the landlord's liability for a failure to keep the leased premises in a proper state of repairs.

The rule relating to the liability of the landlord for personal injuries resulting from a breach of an agreement to repair is stated in 32 Am. Jur., 597-598, Landlord and Tenant, Par. 723, as follows:

"While the authorities are not entirely agreed as to the effect of a landlord's covenant to repair with regard to his liability for personal injuries to a tenant and his invitees, according to the great weight of authority, a landlord's breach of his covenant to repair the demised premises or to keep the premises in repair, in consequence of which the tenant or those in privity with him receive personal injuries, does not give rise to a cause of action either ex delicto or ex contractu, in favor of the injured person against the landlord for damages or indemnity for the injuries thus caused, unless it appears that at the time of the demise the premises contained, to the landlord's knowledge, dangerous hidden defects unknown to or concealed from the tenant, which the tenant could not have discovered by reasonable inspection.  *  *  *  It is the rule in most jurisdictions that in covenanting to repair the leased premises, the parties do not contemplate that if the premises become defective through the landlord's failure to comply with his covenant, an

accident to the tenant or to someone in privity with him will be the probable result of the breach, and hence damages for such an injury are not to be included in assessing the damages in an action for damages for breach of the covenant to repair."

In the case of Jones v. Millsaps, 71 Miss. 10, 14 So. 440, 23 L. R. A. 155, the Court said:

"The general rule is firmly established that no implied covenant for repairs can be raised against the lessor. The lessee cannot invoke an implied covenant of the landlord that the leased premises are fit and suitable for the lessee's business or use. The intending tenant must use his own faculties, and judge for himself if the premises he desires to lease are in repair and are suitable for his use. If he wishes to protect himself against the hazards of subsequently occurring accidents or defects requiring repairs, he must do so by proper covenants in his contract of lease. * * * The duty of the tenant to examine the premises and protect himself by proper stipulations in his contract of lease, if danger is suggested by his examination, is the same in case of the leasing of a whole or of a part only. He cannot fix liability upon his lessor by some supposed implied covenant to repair, when he had it in his power to create this covenant expressly in the written contract, and failed to do so."

In the case of Rich v. Swalm, 161 Miss. 505, 137 So. 325, the Court had under consideration the question of liability of a landlord, who had agreed to repair the leased premises, for damages for personal injuries to the tenant resulting from porch banisters giving away; and the Court held that such damages were too remote to be included in an action for breach of the landlord's covenant to repair generally. The Court in its opinion in that case said:

"The obligation being purely contractual, and the liability being not in tort but upon breach of contract, the rule of liability is that which was long ago announced

in the case of Hadley v. Baxendale, 9 Exch. 341, 2 C. L. R. 517, and which has been adopted and repeatedly reaffirmed in this state, * * * .

"The damage or injury must be such as would arise naturally according to the usual course of things, or else it must have been contemplated as a probable result of the breach. * * * And thus we arrive at the question here in hand: Does the failure of a landlord to perform his contract to repair make him liable for personal injuries resulting from the want of repair? Or to put the question that is the more exactly before us: Does the failure of a landlord to perform his contract to repair the premises generally, as distinguished from specific repairs undertaken to be made, render him liable for personal injuries occurring at any place on the premises which happens to be out of repair?

" * * * The exact legal issue has never been decided by this court, but it has been under review in nearly every state in the Union, and the great weight of authority has responded that personal injuries are too remote to be included in an action for breach of covenant to generally repair; that such an injury is not a natural or probable consequence which ordinarily and reasonably could be anticipated from a breach of covenant to generally repair; that, in order to recover such damages, there must be shown some act of negligence or misfeasance, beyond the mere breach of the covenant to repair."

In the case of Hodges v. Hilton, 173 Miss. 343, 161 So. 686, the Court held that where the owner had expressly agreed with the tenant to repair the decayed supports of a second-story porch, he was bound to anticipate that personal injuries would naturally and probably result from the use of the porch, if not repaired; that the owner's express agreement with the tenant to repair the decayed supports of the porch was for the benefit of the tenant and those lawfully upon the demised premises in the right of the tenant; and that the owner's negligent failure to repair the decayed supports of the porch as

promised the tenant, and the consequent injury to the plaintiff when the porch fell while in use by the plaintiff to whom the tenant had let the second floor, rendered the owner liable to an action in tort for damages to the person injured. But the Court based its decision in that case on the fact that the owner's agreement to repair was an agreement to make specific repairs, and we have no such agreement here.

It thus appears that under our own decisions a landlord's breach of his covenant to repair generally the demised premises (as distinguished from an agreement to make specific repairs) does not render him liable for damages for personal injuries to the tenant or one in privity with him, unless it appears that at the time of the demise the premises contained, to the landlord's knowledge, dangerous hidden defects unknown to or concealed from the tenant, which the tenant could not have discovered by a reasonable inspection.

The duties and liabilities of the landlord to the employee of the tenant with respect to personal injuries ordinarily are the same as those owed by the landlord to the tenant. 52 C. J. S., p. 71, Landlord and Tenant, par. 421.

Under the lease contract in this case it was expressly provided that, "Minor surface repairs within space demised exclusively to lessee to be done by lessee; other repairs and changes, as required, to be done by lessor." If the repair of the window represented a minor surface repair within the space demised exclusively to the lessee, the contract imposed the duty on the Monroe Calculating Machine Company to make the repair. If such repair fell within the category of "other repairs and changes, as required," the repair was to be made by the lessor. The failure of the lessors to make the repair may or may not have constituted a breach of the lessors' covenant to make "other repairs and changes, as required." But that clause in the contract is quite different from an express agreement to make specific re-

pairs on the west window and make the same fit for use, so as to bring the case within the rule applied by the Court in the case of Hodges v. Hilton, supra. The obligation imposed in the lease contract that we have here is an obligation for general repairs and not an agreement to make specific repairs, as in the Hodges case; and the rule laid down in Rich v. Swalm, supra, is applicable to the facts in this case. If there was a breach of the appellee's covenant to repair, such breach did not give rise to a cause of action in the appellant's favor for damages for personal injuries resulting from the appellees' failure to repair, unless it could be shown that there was a dangerous hidden defect in the window of which the appellees had knowledge, and which was unknown to and concealed from the appellant.

The appellant, as we have seen, alleged in his declaration and attempted to prove that there was such a dangerous hidden defect in the window, which was concealed by the piece of tin and was not apparent to him at the time he attempted to raise the window; and the issue as to the appellees' liability on that ground was submitted to the jury under two instructions which the court granted to the appellant, and the jury decided that issue against the appellant.

█ We have carefully examined the appellant's instructions numbered, 4, 5, 6, 8, 10, 16 and 17, which the court refused to grant; and in our opinion there was no reversible error in the action of the court in refusing to grant those instructions. The appellant has cited many cases in support of his contention that the more liberal principles embodied in the sections quoted from the A. L. I. Restatement should be applied in a case of this kind. But we think that the rule stated by our own Court in Rich v. Swalm, supra, is sound, and that rule must be applied here.

█ The appellant also complains of certain errors and omissions in the instructions granted to the appellees. But we have examined each of those instruc-

tions, and we find no errors in the instructions which would justify a reversal of the judgment of the lower court. Complaint is made of several instructions on the ground that the instructions leave out the question of concealment of the rotten condition of the window frame and the failure of the defendants to warn the plaintiff of the hidden defects. ■■ ■ But the rule is well-settled that all instructions must be read together, and the question as to the defendants' liability on account of the alleged hidden defects in the window was properly submitted to the jury in two instructions granted to the plaintiff. ■■ ■ Complaint is also made of the defendants' instruction which appears on page 351. But that instruction merely required that the plaintiff prove that there was a defect in the window and that such defect proximately caused the window to break ■■ ■ There is no merit in the contention that the court erred in granting that instruction. Complaint is also made of the defendants' instruction appearing on page 354 of the record. But that instruction merely states the rule of law applied by this Court in Rich v. Swalm, and informs the jury that it is only in a case where there is an agreement for specific repairs that a breach of the agreement will create liability in a case of this kind. ■■ ■ Complaint is made of other instructions on the ground that they failed to state that the defendants might be held liable for the plaintiff's injuries if the evidence showed that the injuries resulted from the defendants' negligence in making repairs on the window. But the errors complained of, if any, were cured by other instructions dealing with the defendants' liability for negligence in making the repairs.

It is also argued that the judgment of the lower court should be reversed on the ground that the proof showed that the appellees were guilty of negligence in the making of repairs on the window in March 1951.

■■ ■ But there was no proof in the record to show that the repairs made on the window in March 1951 were

made in a negligent manner. The only testimony on that point offered by the appellant was that of Robert L. Daniels, Jr., who testified that the glass pane in the window was broken out by a windstorm while he was in charge of the Meridian office, and that when the glass was replaced the tin was put on the lower right corner of the sash, and the testimony of Robert M. Caldwell who testified the glass pane in the west window fell out in March 1951, and when it was replaced, the piece of tin was put on the sash. M. A. Pigford, however, testified that the strip of tin had been on the window since he took charge of the building in 1947, and that he had the angle irons installed on the window in March 1951 after a windstorm had damaged other parts of the building. Pigford stated that no damage was done to the west window of Room No. 211 during the windstorm but that the glass was blown out of the south window. Pigford's testimony was corroborated by the testimony of Henry C. Parker, the mechanic who installed the angle irons; and Parker stated that he inspected the wood in the window sash at that time and found that it was sound. There was no proof to show that the angle irons had been installed in an improper or unworkmanlike manner or that the angle irons had anything to do with the breaking of the glass in the window six months later.

At best, the appellant's proof tended to show that his injuries resulted, not from some act of negligence or unskillfulness in making repairs, but from the appellees' failure to keep the premises in safe condition by making other repairs that were needed. And for that failure the appellees cannot be held liable in a case of this kind under the rule laid down in Rich v. Swalm, supra.

It is next argued that the Court erred in excluding the testimony offered on behalf of the appellant to prove that there were other windows in the office building about which complaints had been made. But we think there was no error in the action of the court in excluding that testimony. The plaintiff admit-

ted that he had raised and lowered the window in Room No. 211 many times during the 4½ months that he had occupied the room, and that he had never talked to the manager of the building about the condition of the window or made any complaint to him about the alleged defects in the window.

■■ ■■ It is next argued that the court erred in not allowing the plaintiff to prove that the window was repaired by the defendants after the plaintiff was injured. But there is no merit in this contention. Lonnie Flay McKee, one of the appellees' witnesses, testified that he replaced the glass in the window for Mr. Pigford after the accident.

Other errors have been assigned and argued in the appellant's brief, but we think none of those errors are of sufficient importance to require a detailed discussion in this opinion.

The judgment of the lower court is therefore affirmed. Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.