Anna Mae **FOSTER**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 952.

United States District Court
S. D. Mississippi, W. D.

Feb. 19, 1963.

Ramsey, Ramsey & Bodron, Vicksburg, Miss., for plaintiff.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., and Edwin R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., for defendant.

COX, Chief Judge.

The plaintiff sued the United States under the Tort Claims Act for negligence in the destruction of her property by a fire which occurred at the Waterways

Experiment Station of the government near Vicksburg, Mississippi. On July 28, 1958, the plaintiff entered into a five year lease of a space and a long list of government-owned fixtures, equipment and appliances in a cafeteria which the plaintiff operated in said facility until it burned about 3:00 A.M., October 3, 1960. The lease expressly covenanted against any duty of the lessor to maintain the leased premises or to make any repairs thereto, and against damages sustained by lessee's property, but provided that the lessee should exercise due diligence in the protection of the demised premises against damage or destruction by fire and other causes. The lessee even covenanted to indemnify the lessor against such claims. Paragraph 4, paragraph 5, paragraph 8 and paragraph 9 of the lease containing covenants pertinent here are inserted in the footnote.[1]

The plaintiff claims that she purchased furniture, fixtures, equipment and supplies which were destroyed in this building by fire and which had a value in excess of ten thousand dollars. The case was tried before the Court solely on a report of a government committee which investigated this fire to determine its origin and cause, a deposition and on stipulation of counsel agreeing that plaintiff's damages were ten thousand dollars. This report, significantly, decided very little and is replete with hearsay statements and conclusions of witnesses having little probative value.

The tenant locked the doors of the leased premises for the weekend at the close of business on Friday, July 31. The government maintained constant watchman service over the entire facility including the cafeteria, and its guard kept a key to the leased premises. The lessor entered the leased premises and performed the necessary janitorial services therein and waxed the floors of the cafeteria on Saturday, August 1. Some one reported a strong smell of natural gas in the building on Saturday morning (August 1) but the repairman found no leaks therein. Later, Saturday afternoon the lessee entered the leased premises to remove something from the refrigerator and she likewise smelled gas and reported it to the lessor but the maintenance man found no leaks. The repairman primarily relied on the flame test to detect the gas leak which he said was reliable. Within thirty minutes prior to this fire, the watchman had made his rounds in the hall of this building and detected no smoke and looked through the glass door into the cafeteria and saw nothing wrong. The leased premises were lighted by fluorescent ceiling fixtures mounted within an inch and a quarter of the ceiling and they burned all night pursuant to the lessor's requirements. The watchman from another point on the reservation observed smoke coming out of the cafeteria and the floor above it and immediately reported the fire. The Vicksburg Fire Department responded.

1. "4. That the lessee has inspected and knows the condition of the leased property and it is understood that the same is hereby leased without any representation or warranty by the Government whatsoever, and without obligation on the part of the Government to make any alterations, repairs, or additions thereto."

"5. That, subject to the limitations of Condition No. 23 hereof with respect to the restoration of the leased property, all portions of the leased property shall at all times be protected and maintained in good order and condition by and at the expense of the lessee."

"8. That the United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the use and occupation of the said premises, or for damages to the property of the lessee, or for injuries to the person of the lessee (if an individual), or for damages to the property or injuries to the person of the lessee's officers, agents, servants, or employees, or others who may be on said premises at their invitation or the invitation of any one of them, or arising from or incident to any other Governmental activities; and the lessee shall hold the United States harmless from any and all such claims.

"9. That the lessee shall at all times exercise due diligence in the protection of the demised premises against damage or destruction by fire and other causes."

to a call for help, but the combined efforts of the equipment at the station and of the municipality were unable to prevent a complete destruction of the leased premises and its contents. The witnesses before the committee substantially testified that the fire originated in the ceiling of the cafeteria. There was no eyewitness to the actual start of the fire, and nobody testified as to exactly where in the cafeteria the fire started, or what started it.

The floor of the cafeteria was concrete, its side walls were made of masonry and the ceiling was celotex which is as combustile as wood. The main concession had five fluorescent fixtures with four lights 48″ long and twelve fluorescent fixtures with two lights 48″ long in the ceiling of the cafeteria. Early in 1960, one of these fixtures (not located or described in this record) had a ballast or starter to explode and burst into flames during business hours and burned a section of this ceiling before it was extinguished. The lessor voluntarily and gratuitously repaired this damage by replacing the fixture with one just like it, and replaced it on a celotex ceiling to match the rest of the ceiling; and installed it without any protection between the ballast and the ceiling, and suspended the fixture only one and a quarter inches from the ceiling just as the fixture was originally installed. Such installation does not meet the minimum requirements of the National Fire Protection Association which regards such an installation as unsafe, unless the ballast were insulated from the combustible ceiling material, or unless the suspended fixture were suspended not less than one and a half inches from the ceiling. A fluorescent light has such a low voltage requirement that an ignited ballast will not trip the automatic switch in the event of such malfunction and the automatic switch controlling the electrical system in this building was not tripped on this occasion during this fire. There is no evidence to show that this unsafe repair on this occasion had any causal connection with the second fire. It is argued that such evidence sufficiently establishes the defendant's responsibility for this fire as a matter of inescapable reasonable inference from the circumstances shown.

Liability vel non must turn in this case upon whether or not the defendant has breached or violated any duty to the lessee under its lease, or by making such repairs in a substandard manner after the first fire. If there had been a short circuit in the electrical system, it would have tripped the automatic switch and disconnected the current from the building, but that did not happen. One of these fluorescent fixtures in this building simply malfunctioned and was probably assisted by an accumulation of natural gas near the ceiling of the building as a material assist to the rapidity with which the building caught fire and the fire spread and destroyed the building in spite of every effort made to save it. There are several elementary principals which must guide and control a decision of this kind. It is not enough for a plaintiff to prevail to show that a defendant was guilty of some negligence, or that a defendant's negligence co-existed with an injury to a plaintiff. Neither verdicts of juries nor judgments of the Courts may be based upon mere possibilities or on surmises, speculations, conjectures or speculative inferences. A plaintiff must show by the greater weight of the more convincing evidence that the defendant was negligent and that such negligence was the proximate cause of his injury. That has not been shown by the evidence in this case. An inference from facts proved may not be tacked on to and pyramided with other inferences to reach a sound conclusion. The last inference must be a reasonable and sound one based upon the greater weight of the more convincing probabilities in the case and not upon mere speculation. Post hoc, ergo propter hoc (After this, therefore, on account of it—the fallacy of arguing from mere temporal sequence to cause and effect relationship) is not

good as evidence or convincing as argument in Mississippi.[2]

■■ In the absence of an express covenant in a lease therefor, a landlord is under no obligation to make repairs to the leased premises. He does not impliedly warrant the suitableness or fitness or safety of the leased premises. The lessor is under no duty to detect latent defects in the leased premises and advise the lessee thereof, because he is not an insurer against either of these things.[3]

■ Indeed, if a lessor voluntarily and even gratuitously undertakes to make repairs to the leased premises, he must exercise due care in doing so; that is, reasonable and ordinary care of a reasonably prudent person, failing in which, he is liable in negligence to the lessee for damages proximately caused thereby.[4]

If it be assumed that the lessor negligently replaced the light fixture and restored the ceiling exactly as it was prior to the first fire in the early part of 1960, there is, nevertheless, no evidence to show that the October 3 fire started as a proximate result thereof. The evidence is susceptible to the inference that the defendant was negligent in making this installation, after the earlier fire, in the manner in which it did so, but there is no evidence to show where the second fire started, or exactly what started the second fire. Speculative inferences are not available to supply that hiatus in the plaintiff's proof in this case.[5]

A plaintiff must prove negligence on the part of the defendant and must prove the proximate cause to be the result of such negligence in order to prevail.[6]

■■ A plaintiff need not prove liability and damages beyond a reasonable doubt, or to an absolute certainty. Such a case must be proved by the greater weight of the more convincing evidence as to the probabilities. Negligence and proximate cause, however, may be established by circumstantial evidence as the authorities cited announce. There is simply no direct or positive or circumstantial evidence before the Court to establish liability against the defendant in this case.

This is an unfortunate event. Natural sympathies are with this individual who can least afford to suffer this loss, but that is not the test or a consideration in the determination of the property rights of the litigant. The fact that a ballast in one of these fixtures exploded and set this building on fire in the early part of 1960 is no evidence or permissible argument that the same fixture exploded again. Since the lessor voluntarily made this repair in such negligent manner it behooved the plaintiff to prove that such negligent installation was the cause of this fire and she failed to do so. Under the clear provisions of this lease, the lessor made no express covenant with the lessee that the premises were safe or suitable for her purposes. If the fire did start by reason of an explosion of a ballast in one of the other fixtures, although it was not safely or properly installed according to underwriter standards, the lessor had no duty to the lessee in the connection and had no liability therefor. A re-writing of the lease between these parties with provisions therein to the contrary would be neces-

2. Jackson v. Swinney, Miss., 140 So.2d 555; Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625.

3. Jones v. Millsaps, 71 Miss. 10, 14 So. 440, 23 L.R.A. 155; Hiller v. Wiley, Miss., 5 So.2d 489; 192 Miss. 488, 6 So. 2d 317; McDonald v. Wilmut Gas & Oil Company, 180 Miss. 350, 176 So. 395; Evans v. Hill, 183 Miss. 7, 181 So. 847; Rich v. Swalm, 161 Miss. 505, 137 So. 325; 150 A.L.R. 1373–1384; 32 Am.Jur.

(Landlord and Tenant) § 671, § 672, § 678.

4. Green v. Long, 152 Miss. 117, 118 So. 705; Beard v. General Real Estate Corporation, (C.A.10) 229 F.2d 260; 150 A.L.R. 1373–1384.

5. Masonite Corporation v. Hill, 170 Miss. 158, 154 So. 295, 95 A.L.R. 157; 65 C. J.S. Negligence §§ 244, 265.

6. 20 Am.Jur. (Evidence) § 1189.

sary to attain a different conclusion in this case.

Accordingly, since the defendant was not an insurer of these premises against fire, and the defendant did not expressly or impliedly assume any duty to keep and maintain the leased premises safe against fire, the evidence does not establish any liability against the defendant for negligence on this occasion. A judgment for the defendant may be prepared for entry.