Clifton F. ARLEDGE and United States Fidelity and Guaranty Company, Plaintiffs-Appellees,

v.

GULF OIL CORPORATION, Defendant-Appellant.

No. 76–1307.

United States Court of Appeals, Fifth Circuit.

April 28, 1978.

L. F. Sams, Jr., Tupelo, Miss., for defendant-appellant.

Robert G. Gilder, Southaven, Miss., for Clifton F. Arledge.

Before HILL, RUBIN and VANCE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The jury in this diversity case awarded the plaintiff, a gas station employee, damages against Gulf Oil Corporation ("Gulf"), his employer's lessor for injuries sustained when a defective hydraulic lift fell and struck him while he was repairing a car. Gulf urges that the trial judge erred in instructing the jury that Gulf had assumed a duty to repair or replace the defective lift, leaving to the jury only the question whether Gulf performed that duty negligently. We agree, as a matter of Mississippi tort law, that insufficient evidence existed to support the judge's conclusion in this respect. Ample evidence was introduced, however, to support the view that Gulf had assumed a duty of repair or replacement under its lease agreement with the plaintiff's employer. The judge's interpretation of the lease was not necessarily mistaken, but the question of contract interpretation is one for the jury in a jury-tried case. We are, therefore, compelled to vacate the judgment and to remand for a new trial.

## I.

The plaintiff, Clifton Arledge, was employed as a mechanic at a Houston, Mississippi, gas station owned by Gulf and leased during 1972 to Wayne Byars, Arledge's employer. Byars and Gulf entered on January 25, 1972, into a one-year lease agreement providing, among other things, that Byars would keep all station equipment in good condition, but would not, without Gulf's written consent, make any "alterations, additions, or changes to the buildings, struc-

tures, or fixtures, both interior and exterior."

In 1972, one of the two hydraulic lifts at the Byars station began to leak oil, and occasionally to "jump." Byars notified Dan Thomas, Gulf's local bulk distributor in July that the lift needed replacement. Thomas, in turn, notified a Gulf retail marketer, James McCarty, who requisitioned a replacement lift from the Gulf sales department. The new lift was not installed until November. At no time in 1972 did Gulf make any attempt to effect repairs on the defective lift at the Byars garage.

On October 10, while he was changing the oil in a customer's car that he had raised on the lift, Arledge, who knew of the lift's defect and was operating the lift without engaging the safety latch, was struck across the neck and shoulders when the lift slipped and fell. The jury found that fifty per cent of the negligence that caused Arledge's injuries was attributable to him.

## II.

 The trial judge charged the jury as follows:

. . . I think the evidence is uncontradicted that Gulf did undertake to make repairs to or replace a defective or ill-repaired lift. In other words, regardless of its contract with its tenant, its practice was to have its servicemen repair these lifts, and if necessary to replace them. And, therefore, they assumed that duty in the conduct of their affairs with this Gulf station operated by Mr. Byars at the time of this incident.

It is unclear whether the trial judge meant by this that Gulf's past practice in repairing defective lifts should be considered an assumption of duty in tort, regardless of the

existence of any contract between Gulf and Byars; or that, regardless of ambiguities in the terms of the Byars lease, the evidence of Gulf's past practices should be taken as proving that Gulf had specifically undertaken by contract to repair or replace defective lifts. Under the Mississippi cases, this distinction is crucial.

Under Mississippi law:

[A] landlord's breach of his covenant to repair generally the demised premises (as distinguished from an agreement to make specific repairs) does not render him liable for damages for personal injuries to the tenant or one in privity with him, unless it appears that at the time of the demise the premises contained, to the landlord's knowledge, dangerous hidden defects unknown to or concealed from the tenant, which the tenant could not have discovered by a voluntary inspection.

*Ford v. Pythian Bondholders Protective Committee*, 1955, 223 Miss. 630, 78 So.2d 743, 749; *Wilbourn v. Hardin*, Miss.1970, 234 So.2d 606; *Floyd v. Lusk*, Miss.1966, 190 So.2d 451; *Rich v. Swalm*, 1931, 161 Miss. 505, 137 So. 325. Where, as here, there is no evidence of concealment or fraud, a landlord can be held liable only for actual repairs that are negligently performed, *Kassis v. Perronne*, Miss.1968, 209 So.2d 444; *Green v. Long*, 1928, 152 Miss. 117, 118 So. 705, or for failure to perform an agreement, supported by consideration to effect specific repairs, *Hodges v. Hilton*, 1935, 173 Miss. 343, 161 So. 686.[1]

Arledge did not succeed in showing that actual repairs, negligently performed, caused his injury. Some evidence was introduced that Gulf had attempted to repair the defective lift while the Byars station was leased to a different lessee; no evidence was introduced, however, that there

---

1. In *Ford v. Pythian Bondholders Protective Committee, supra*, the Mississippi Supreme Court specifically declined to adopt Restatement 2d, Torts, § 357 as a statement of Mississippi law. Section 357 states:

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if

(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

(c) the lessor fails to exercise reasonable care to perform his contract.

was any negligence in making the repairs. *Lollar v. East Mississippi Oil Co., Inc.*, 1958, 234 Miss. 295, 106 So.2d 65. We also cannot accept counsel's argument that, where the required "repair" is total replacement, delay in replacement should be deemed per se the equivalent of faulty repair. However much such an approach commends itself to common sense, it would obliterate the distinction between malfeasance and nonfeasance that lies at the heart of Mississippi's law of landlord liability. *Kassis v. Perronne, supra*, 209 So.2d at 446–447; *Green v. Long, supra*, 118 So. at 706.

While agreeing with Gulf that the plaintiff thus failed to establish Gulf's undertaking a duty to its tenant or to its tenant's employees in tort, we do find that evidence that supports the allegation that Gulf, by contract, specifically agreed to repair or replace defective lifts.

The lease between Gulf and Byars does not expressly deal with the repair or replacement of equipment. It does provide, however, that Byars as lessee, may not alter or change fixtures in the station without the consent of Gulf, as lessor. A schedule of equipment covered by the lease is included in the contract, and specifically includes the station's hydraulic lifts. It is thus readily inferable that the parties contemplated some responsibility on the part of Gulf before repair or replacement of defective lifts could be effected, *cf., Frazier v. Continental Oil Co.*, 5 Cir. 1978, 568 F.2d 378, 384–385.

In interpreting the parties' contract, it is elementary that the intentions of the parties govern. *Mississippi Rice Growers Assn. v. Pigott*, Miss.1966, 191 So.2d 399, 402–403. Where a written agreement is silent or ambiguous in its language, a fact-finder may turn to extrinsic evidence to support an interpretation of the parties' intentions. *Barnett v. Getty Oil Co.*, Miss. 1972, 266 So.2d 581; *Hoerner v. First National Bank of Jackson*, Miss.1971, 254 So.2d 754; *Mississippi Rice Growers Assn. v. Pigott, supra*.

Here, where the agreement is ambiguous, a fact-finder could appropriately consider how Gulf handled repair and replacement of equipment under leases equivalent to the standard form in use in this case. Gulf's employee McCarty testified that, in his 22 years of employment with Gulf, Gulf had invariably undertaken the repair and replacement of defective lifts at stations under lease. The fact-finder could further consider the short-term nature of the lease, and which party's version of the parties' actual intentions was more consistent with the apparent underlying purpose of the contract.

Had this been a judge-tried case, the judge's conclusion that Gulf and Byars contemplated, at the time of their contracting, a specific agreement by Gulf to repair or replace defective lifts, such a conclusion would have passed muster under the "clearly erroneous" standard of review. We would further affirm the trial court's subsequent conclusion that the accident was foreseeable, and thus actionable on the part of the injured employee. *Hodges v. Hilton, supra.*

However, the interpretation of a contract is a question of fact. *Hadad v. Booth*, 1955, 225 Miss. 63, 82 So.2d 639; *Dobson v. Masonite Corp.*, 5 Cir. 1966, 359 F.2d 921. In a jury case such as this, where the relevant agreement is not clear and unambiguous on its face, any issue of contract interpretation must be submitted to the jury for resolution. *Pletz v. Christian Herald Assn., Inc.*, 5 Cir. 1973, 486 F.2d 94; *United States for the Use of Dixie Plumbing Supply Co. v. Taylor*, 5 Cir. 1961, 293 F.2d 717.

In the present case, while the judge's charge may have articulated an acceptable interpretation of the parties' contractual obligations, that interpretation was not his to reach. Consequently, we are compelled to vacate the court's judgment, and to remand for further proceedings consistent with this opinion.