413 So.2d 378 (1982)
F.L. CAPPAERT
v.
DeEtte JUNKER.
No. 53352.
Supreme Court of Mississippi.
April 21, 1982.
Rehearing Denied May 19, 1982.
Ramsey, Bodron, Robinson, Andrews & Yoste, H.M. Yoste, Jr., Vicksburg, for appellant.
Teller, Chaney & Rector, Landman Teller, Jr., Vicksburg, for appellee.
Before SUGG, P.J., and BROOM and BOWLING, JJ.
SUGG, Presiding Justice, for the Court:
The narrow question in this case is whether an exculpatory provision in a residential *379 lease is void as being against public policy. The lessor sought to immunize himself against damages caused by his negligence in maintaining a common area on the leased premises.
Appellee leased an apartment from appellant in the Pecan Ridge Apartment complex which, at the time of the trial consisted of six completed buildings with each building containing twelve apartments. Appellee's apartment was upstairs and she and the tenants in two other apartments used a common stairway for access to their apartments. Appellee slipped, fell on the stairway, was injured, and sued appellant for negligently maintaining the stairway. Appellee recovered a judgment against appellant for $20,000.
Appellee's lease contained the following exculpatory provisions:
The lessor shall not be liable to Lessee, or to Lessee's employees, patrons and visitors, or to any other person for any damage to person or property caused by any act, omission or neglect of Lessor or any other tenant of said demised premises, and Lessee agrees to hold Lessor harmless from all claims for any such damage, whether the injury occurs on or off the leased premises.
Lessee assumes responsibility for the condition of the premises. Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or any vices or defects of the leased property, or the consequences thereof, except in case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
Appellant attempted to introduce the lease containing the exculpatory provisions in evidence, but the trial judge refused to admit it into evidence holding that exculpatory provisions in residential leases are void as against public policy.
Leases are considered as a conveyance of the property for a specified period of time. Hurst v. English, 357 So.2d 132 (Miss. 1978); Standard Fruit & Steamship Co. v. Putnam, 290 So.2d 612 (Miss. 1974); Rich v. Swalm, 161 Miss. 505, 137 So. 325 (1931); Crowell v. N.O. and N.E.R.R. Co., 61 Miss. 631 (1884). Since a lease is considered as a conveyance of an interest in land, the common law doctrine of caveat emptor applies between the lessor and the lessee. In Jones v. Millsaps, 71 Miss. 10, 14 So. 440 (1893) this Court recognized the common law rule and concluded there was no implied covenant of fitness in a commercial lease in the following language:
This line of decisions rests upon sound reason. The general rule is firmly established that no implied covenant for repairs can be raised against the lessor. The lessee cannot invoke an implied covenant of the landlord that the leased premises are fit and suitable for the lessee's business or use. The intending tenant must use his own faculties, and judge for himself if the premises he desires to lease are in repair and are suitable for his use. If he wishes to protect himself against the hazards of subsequently occurring accidents or defects requiring repairs, he must do so by proper covenants in his contract of lease. He takes his leased premises for better or for worse, as an ancient authority aptly characterizes his taking. (71 Miss. at 18, 14 So. at 441)
The rule has been applied consistently to commercial leases and has been extended to residential leases. Loflin v. Thornton, 394 So.2d 905 (Miss. 1981); Kassis v. Perronne, 209 So.2d 444 (Miss. 1968); Turnipseed v. McGee, 236 Miss. 159, 109 So.2d 551 (1959).
However, a significant exception with regard to common areas or approaches under the control of the lessor has been recognized in our cases. In Hiller v. Wiley, 192 Miss. 488, 6 So.2d 317 (1942) the exception was first stated in the following language:
[T]he testimony ... discloses that the property occupied by the appellee as a *380 tenant was a double house; that is, part thereof was leased to another tenant; but there was a common approach, and a single set of front steps available for use by all tenants and by the landlord. Under these circumstances it is clear that the landlord, not only for convenience but of necessity, retained control over, and hence responsibility for the reasonable upkeep of, the steps, and is liable for a failure to use reasonable care to keep them reasonably safe. (192 Miss. at 492, 6 So.2d at 317)
Accord: Turnipseed v. McGee, 236 Miss. 159, 109 So.2d 551 (1959).
The following is firmly established by the above cases. A lessee takes lease premises as he finds them with no implied covenant of fitness. Lessor is not obligated to make repairs to leased premises. In leases involving residential property leased to multiple tenants, the lessor, with respect to common areas, has the duty to use reasonable care to keep the common areas reasonably safe and is liable for damages for failure to perform the duty.
In determining whether contracts should be invalidated on the ground that they violate public policy, we have held that this should not be done unless the contract is prohibited by the Constitution, a statute, or condemned by some decision of the courts construing the subject matter. This was expressed in State ex rel Knox v. Hines Lbr. Co., 150 Miss. 1, 115 So. 598 (1928) in the following language:
The power to invalidate contracts or agreements on the ground that they violate public policy is far reaching and easily abused, and this court is committed to the doctrine that the public policy of the state must be found in its constitution and statutes, "and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials." U.S. v. Trans-Missouri Freight Ass'n, 166 U.S. [290 at] 340, 17 S.Ct. [540 at] 559, 41 L.Ed. 1007. In the case of Orrell v. Bay Manufacturing Co., 83 Miss. 800, 36 So. 561, 70 L.R.A. 881, in discussing the question of public policy, the court said:
"The inference clearly to be drawn from the cases last cited and the authorities on which they are based is this, that contracts are not in violation of the public policy of the government unless either prohibited by express terms or the fair implication of a statute, or condemned by some decision of the courts construing the subject-matter... ." (150 Miss. at 48, 115 So. at 605)
In Illinois Central Railroad Co. v. Harris, 108 Miss. 574, 67 So. 54 (1914) this Court held a contract between a railroad company and its employees void because it violated public policy. The railroad company required its employees to sign a contract which released the company from every conceivable act of negligence of any other employee of the company before one could secure employment with the company. In declaring the contract void the Court stated:
We adopt the reasoning of Judge Smith in Little Rock R.R. Co. v. Eubanks, 48 Ark. 460, 468, 3 S.W. 808, 810 (3 Am.St. Rep. 245), when he said:
"But surely the state has an interest in the lives and limbs of all its citizens. Laborers for hire constitute a numerous and meritorious class in every community. And it is for the welfare of society that their employers shall not be permitted, under the guise of enforcing contract rights, to abdicate their duties to them. The consequence would be that every railway company and every owner of a factory, mill, or mine would make it a condition precedent to the employment of labor that the laborer should release all right of action for injuries sustained in the course of the service, whether by the employer's negligence or otherwise. The natural tendency of this would be to relax the employer's carefulness in those matters of which he has the ordering and control, such as the supplying of machinery and materials, and thus increase the perils of occupations which are hazardous, even when well managed. And the final outcome would be to fill the country with *381 disabled men and paupers, whose support would become a charge upon the counties or upon public charity." (108 Miss. at 579, 67 So. at 56)
Furthermore, we held in Western Union Tel. Co. v. Bassett, 111 Miss. 468, 71 So. 750 (1916), that exculpatory provisions in common carrier contracts are void as against public policy.
The narrow question pertaining to the exculpatory provision in the lease contract in this case is one of first impression in Mississippi. In a recent annotation, Validity of Exculpatory Clause in Lease Exempting Lessor From Liability, 49 A.L.R.3rd 321 (1972) exculpatory clauses have been upheld in many states on the theory that freedom to contract is the dominant public policy, and since the contracts relate to the private business of the parties, they are not a matter of public concern. However, at least four states by statute,[1] seven states and the District of Columbia[2] by judicial decision, have declared exculpatory clauses void as against public policy under the facts developed in those cases.
The rationale of the jurisdictions which have held exculpatory clauses in residential leases void as against public policy is perhaps best expressed in McCutcheon v. United Homes Corp., 79 Wash.2d 443, 486 P.2d 1093 (1971). The Court stated:
It is safe to say, however, that there is no true majority rule. There are only numerous conflicting decisions, decisions concerned with contracts of indemnity, cases relating to property damage under business leases, and a disposition of the courts to emasculate such exculpatory clauses by means of strict construction... . From this one can reasonably infer that even though such clauses are recognized by some courts, a great number have regarded them with disfavor.
... .
Furthermore, one must ignore present day realities to say that such an exculpatory clause, which relieves a lessor of liability for personal injuries caused by its own negligence, is purely a "personal and private affair" and "not a matter of public interest."
We no longer live in an era of the occasional rental of rooms in a private home or over the corner grocery. In the relatively short span of 30 years the public's use of rental units in this state has expanded dramatically. In the past 10 years alone, in the state of Washington, there has been an increase of over 77,000 rental units. It takes no imagination to see that a business which once had a minor impact upon the living habits of the citizenry has developed into a major commercial enterprise directly touching the lives of hundreds of thousands of people who depend upon it for shelter.
Thus, we are not faced merely with the theoretical duty of construing a provision in an isolated contract specifically bargained for by one landlord and one tenant as a purely private affair." Considered realistically, we are asked to construe an exculpatory clause, the generalized use of which may have an impact upon thousands of potential tenants.
Under these circumstances it cannot be said that such exculpatory clauses are "purely a private affair" or that they are "not a matter of public interest." The real question is whether we should sanction a technique of immunizing lessors of residential units within a multi-family dwelling complex, from liability for personal injuries sustained by a tenant, which injuries result from the lessor's own negligence in maintaining the "common areas"; particularly when the technique *382 employed destroys the concept of negligence and the standard of affirmative duty imposed upon the landlord for protection of the tenant.
An exculpatory clause of the type here involved contravenes long established common law rules of tort liability that exist in the landlord-tenant relationship. As so employed, it offends the public policy of the state and will not be enforced by the courts. It makes little sense for us to insist, on the one hand, that a workman have a safe place in which to work, but on the other hand, to deny him a reasonably safe place in which to live. (486 P.2d at 1096, 1097)
In this case appellant had the duty to maintain the common area in a reasonably safe condition and his duty had been imposed on appellant and other lessors in the cases of Hiller and Turnipseed. In some of the cases from other jurisdictions upholding the validity of exculpatory clauses, the clauses did not deal with any common law or statutory duty of the lessor to maintain the premises in a reasonably safe condition. However, this case involves a positive duty on the part of the appellant as lessor to maintain the common area in a reasonably safe condition.
We therefore hold that the exculpatory clause, insofar as it seeks to immunize appellant against damages caused by his negligence in maintaining the common area on the leased premises, namely, the stairway in question, is void as against public policy. We express no opinion as to the validity of the exculpatory provisions as they pertain to the apartment leased by appellee, because the question of the validity of the exculpatory provisions pertaining to the apartment is not before the Court.
Although not cited in any of the briefs, we note our recent case of Smith v. Smith, 375 So.2d 1041 (Miss. 1979), in which we held that the exculpatory clause in that lease was not void as against public policy. In that case appellant was the assignee of the original lessee in a commercial lease contract covering a building in a shopping center. Appellant sued appellee, the lessor, for damages to merchandise and fixtures and for cost of removal from the premises on order of the appellees before the end of the contract term. The order to move resulted from appellant's persistent requests that the roof be repaired. Appellant alleged that the damages were caused by a leak in the roof which was not repaired by the appellee after notice was given. There was no common law duty on the part of the appellee to maintain the roof. In holding the exculpatory provision in the lease valid, we noted that it represented a division of the risk involved, fully understandable because the landlord reserved no control over the type and value of the inventory of the tenant. The present case is entirely different from Smith because, in the present case the lessor was under a duty to maintain the common area. In Smith the lessor was not under any common law duty to maintain the roof, so the exculpatory clause did not deal with any common law or statutory duty of the lessor. We therefore distinguish Smith from the case under consideration, and affirm.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and DARDEN, JJ., concur.
NOTES
[1] Illinois, Maryland, Massachusetts and New York.
[2] Tenants' Council of Tiber Island-Carrollsburg Square v. DeFranceaux, 305 F. Supp. 560 (D.C. 1969); Kinkaid v. Avis Rent-a-Car Systems, 281 So.2d 223 (Fla.App. 1973); Old Town Development Co. v. Langford, 349 N.E.2d 744 (Ind. App. 1976); Papakalos v. Shaka, 91 N.H. 265, 18 A.2d 377 (1941); Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 111 A.2d 425 (1955); Crowell v. Housing Authority of the City of Dallas, 495 S.W.2d 887 (Texas 1973); McCutcheon v. United Homes Corp., 79 Wash.2d 443, 486 P.2d 1093 (1971); College Mobile Home Park and Sales, Inc. v. Hoffmann, 72 Wis.2d 514, 241 N.W.2d 174 (1976).