MARLAR v. SMITH et al.

[89 South. 667, No. 21997.]

BILLS AND NOTES. *Statute giving transferee right to transferor's indorsement not applicable to bearer proper.*

The provisions of section 49 of the Negotiable Instruments Law (Laws 1916, chapter 244; section 2627, Hemingway's Code) are not applicable to a note payable to bearer. Such instrument needs no indorsement, but title passes by delivery, and the holder may sue in his own name.

APPEAL from chancery court of Tishomingo county.

HON. A. J. McINTYRE, Chancellor.

Suit by Oscar Marlar against George W. Smith, and others. Decree for defendants, and plaintiff appeals. Affirmed.

W. C. Sweat, for appellant.

Our contention, in the first place, is that, when Smith delivered to Marlar, Bennett's note, payable to him or his order, without endorsing it, whatever the agreement may have been between them about its endorsement, or whether there was any agreement at all or not, it was Smith's duty to endorse the note; and "equity will regard that as having been done which ought to have been done," and will treat the note as having been endorsed by Smith.

Section 49 of the Negotiable Instruments Act, section 2627, Hemingway's Code is as follows: "Where the holder of an instrument payable to his order, transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquired, in addition, the right to have the indorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

Now, when Smith delivered the note to Marlar without having endorsed it, it being payable to his order, Marlar had a right to go into a court of equity and compel him to endorse it. Marlar, however, brought suit in the chancery court for relief, setting up the facts, and asking that Smith be required to pay the note, or to pay the seven hundred dollars purchase price of the land, Smith having given him this worthless note, and asked that a lien be fixed on the land to pay the said purchase money. Under Marlar's prayer for general relief, he had a right to have the court by decree, require Smith to endorse the note, or to treat it under the circumstances as having been endorsed by Smith.

The proof shows conclusively that the note was worthless and that Bennett was hopelessly insolvent and did not have enough to pay the preferred claims against his estate. It further shows that Baugh, who gave the collateral notes, had nothing except that which was exempt by law and that his collateral notes, unsecured, were worthless and that the security had been cancelled by Bennett, the beneficiary, long before Marlar ever got the notes. Smith having failed to have the same transferred on the record, as provided by section 2295, Hemingway's Code, then all the papers which Smith delivered to Marlar for this seven hundred dollars are worthless.

The Uniform Negotiable Instruments Act, section 65, Hemingway's Code, section 2542, provides as follows: "Every person negotiating an instrument by delivery or by a qualified indorsement, warrants: (1) that the instrument is genuine and in all respects what it purports to be. (2) That he has a good title to it. (3) That all prior parties had capacity to contract. (4) That he has no knowledge of any fact which would impair the validity of the instrument or render it valueless."

It will thus be seen from this act that when Smith delivered the collateral notes, and the trust deed securing the same to Marlar, that he warranted that he had a good title to them. This, he did not have because the trust deed securing the notes had been cancelled of record long before

this time, and legally cancelled too. There was no assign-
ment on the record and Bennett had a perfect right to can-
cel the same, and did do so, and this cancellation was of
record when the notes and trust deed were delivered to
Marlar. The fourth clause of the section says that he war-
rants that he has no knowledge of any fact which would
impair the validity of the instrument, or render it value-
less. This is not a fact. Smith had constructive notice
that the trust deed was cancelled, and this certainly did
impair the value of the collateral notes. It will not do to
say that Marlar had as much notice as Smith. When Smith
traded this property to Marlar, it was his duty to know the
condition of the property that he had traded.

When any man trades property to another whether it be
notes, bonds, live stock or real estate, he impliedly warrants
to the purchaser that his title is good. Smith traded this
trust deed just the same as he did the note. He certainly
had no title to the trust deed, and the notes which he traded
were valueless without that security.

Under the law, generally, a man impliedly warrants that
he has good title to whatever property he trades, but under
the Negotiable Instruments Act, when he traded property,
the law makes him expressly warrant that he has good
title to it. Section 2295, of Hemingway's Code, made it
incumbent upon Smith, when he took over this property
from Bennett to see that the trust deed was transferred on
the margin of the record. This he failed to do, as shown by
the record itself, copy of which is in this record. When
Smith failed to require this transfer to be made, he left it
in the condition where Bennett, the beneficiary, could can-
cel the trust deed, which he did, as the record shows, on the
first day of November, 1919. Smith did not trade this
property to Marlar until the 19th day of November, 1919,
eighteen days after the trust deed had been cancelled; there-
fore, when Marlar got possession of the trust deed, it was
worthless. The collateral notes were worthless when the
trust deed was cancelled, and Bennett's note was worthless
without the collateral notes.

If the title to the trust deed in Smith had been good, the collateral notes would, no doubt, have been worth the seven hundred dollars, or more, and Bennett's note would therefore,' have been good; but when the title to the trust deed failed, the whole thing failed. This was not Marlar's fault, legally speaking. He had a right to presume that Smith had a good title to it; and when it developed that the title was not good, it was up to Smith under the law to make it good.

The court below, having held otherwise, committed error, and the appellant, the complainant in the court below, should have a decree under the facts in this record, in addition to the amount for which he was given a decree, for seven hundred dollars and the interest thereon from· the date of the trade; and should have a lien fixed and established on the land for the payment of this amount in addition to the amount that was fixed by the court; and for these reasons we say the cause should be reversed and we should be given a decree here for this amount in addition to the amount for which we had a decree in the court below.

*W. J. Lamb,* for appellee.

Counsel for appellant argues this case and contends that the note that Bennett gave Smith and Smith in turn, turned over to Marlar was payable "to order." Counsel is very much mistaken in this, as the note speaks for itself, and says: "One year after date I promise to .pay to the order of G. W. Smith or bearer," and the chancellor found as a fact the note was payable to bearer.

Counsel further says that Smith gave Marlar the seven hundred dollar worthless note of Bennett. The record does not show that Smith or Marlar, or anyone else, considered Bennett's note worthless at the time the trade was made, but the chancellor expressly finds in deciding the case that at the time this trade was made W. T. Bennett was considered good for his obligations.

Argument made by counsel for appellant, and his reference to the citation of the Code can have no possible appli-

cation to the facts in this case.. Counsel for the appellant further says that the proof shows conclusively that the Bennett note was worthless and that Bennett was hopelessly insolvent, but·the record does not show that at the time the trade was made with Marlar by Smith, that anybody · even suspicioned that Bennett was insolvent, but on the contrary, the record shows, and the chancellor so finds, that everybody believed Bennett at that time was good for his obligations.

The conduct of the parties in this trade shows that the appellees are correct in their contention.   The appellee agreed to assume the five hundred dollar indebtedness of Marlar to Lassiter.· The appellees gave them their note for three hundred dollars which makes eight hundred dollars, and turned over to appellant, Bennett's seven hundred dollar note, which makes the fifteen hundred dollar purchase price.

The appellant took no evidence of debt whatever from the appellees for the seven hundred dollars, which is a potent fact to show that he took the seven hundred dollars Bennett note as that much cash.   Another potent fact to show that the seven hundred dollar note of Bennett ̉was taken by Marlar, a cash payment, is that Marlar took Smith with him and they went together to Juka to see Bennett about the seven hundred dollar note, and Marlar after seeing Bennett was satisfied.

The truth about it is that at the time Marlar and Smith traded, Marlar was perfectly willing and satisfied to take Bennett's note for seven hundred dollars and did do so, but after this was done, and before the Bennett note fell due, Bennett was killed and his affairs were found to be in a very deplorable condition, which fact was known to no one until after his death, and now Marlar wants Smith to lose the seven hundred dollars which from the record in this case, Smith is not entitled to do, nor is Smith entitled to lose the same either by law or equity or good conscience.

We respectfully submit the case ought to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Marlar was the owner of certain lands, and sold them to Smith for the sum of fifteen hundred dollars of which price Smith assumed an indebtedness of five hundred dollars and gave Marlar his note for three hundred dollars and delivered to him a note executed to Smith by W. T. Bennett with certain collateral by which said Bennett note was secured. Subsequent to this transaction Bennett marked the deed of trust which secured the collateral notes satisfied on the record.    Afterwards Bennett died, and was at the time of his death insolvent, and the notes and collateral which secured it were each uncollectable.   The transfer was not made in writing, but the note, being payable to the order of Smith or bearer, was transferred by delivery.   After the discovery of Bennett's insolvency and the loss of the collateral this suit was filed against Smith for the seven hundred dollars represented by the Bennett note.

Parties disagreed in their testimony as to the understanding under which the Bennett note and collateral were transferred to Marlar, and the chancellor found as to this issue in favor of Smith, and entered a decree giving judgment for the three hundred dollars, with a lien thereon, but denying a recovery against Smith for the seven hundred dollar item; from which this appeal is prosecuted.

The appellant relies upon section 49 of the Negotiable Instruments Act (chapter 244, Laws of 1916; section 2627, Hemingway's Code) which reads as follows:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor.   But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

In our opinion this section has no application to a suit on a note payable to bearer. A note so payable is negotiable by delivery, and needs no indorsement. The chancellor reached the same result, and the judgment is affirmed.

*Affirmed.*