ALLEN *v.* SMITH & BRAND.

(Division B.   April 6, 1931.)

[133 So. 599.   No. 29200.]

**J. H. Ford,** of Houston, for appellant.

Leftwich & Tubb, of Aberdeen, for appellees.

**Anderson, J.,** delivered the opinion of the court.

Appellees filed their bill in the chancery court of the Second district of Chickasaw county against appellant and his mother, Mrs. Annie Allen, and her husband, D. B. Allen, who was an uncle of appellant, to foreclose two mortgages on land, one of which was executed to appellees by appellant's mother and stepfather, and the other by the same parties to appellant; the latter having been transferred to appellees. The cause was heard on original bill, answers, and cross-bill of D. B. Allen and wife,

and appellees' answer to the cross-bill and proof, resulting in the decree prayed for by appellees. From that decree appellant prosecutes this appeal. D. B. Allen and wife prosecuted no appeal from the decree against them.

Since we have reached the conclusion that under the law and facts of this case the decree appealed from must be reversed, and a decree rendered here for appellant, in stating the case it will be stated most strongly in favor of appellees. In other words, every material fact favorable to appellees which is shown by the evidence, either directly or by reasonable inference, will be set out.

D. B. Allen and his wife, Mrs. Annie Allen owned in Chickasaw county about one hundred eighty acres of land, which was their homestead. As stated, Mrs. Allen was the mother of appellant, and her husband, D. B. Allen, was appellant's uncle. On January 10, 1921, D. B. Allen and wife executed a deed of trust on their land to secure their note for four thousand five hundred dollars, payable to appellant. There was a prior deed of trust on the land to secure a note for eight hundred sixty-four dollars, which was held by Mrs. Hinds. D. B. Allen and wife failed to pay the note due appellant at its maturity. There was due appellant on this note at maturity, principal and interest, five thousand four hundred dollars. Appellant needed funds with which to purchase an ice plant in the town of Houston. His mother and stepfather were unable to pay the indebtedness due him, and he did not want to foreclose the deed of trust, and turn them out of their home. Appellant procured appellees to lend his mother and stepfather enough money to pay off both deeds of trust on their homestead. When this loan was made there was due on appellant's note five thousand four hundred dollars, and on the note secured by the prior deed of trust held by Mrs. Hinds enough to make the aggregate indebtedness against the land six thousand six hundred ninety-six dollars. On the 12th day of February, 1924, appellees lent D. B. Allen and

wife that amount of money, taking their note therefor, payable January 1, 1925, with six per cent interest, and a deed of trust on their homestead to secure the same. Appellees thereupon gave their checks for the amount of the entire loan, one payable to appellant for the sum of five thousand four hundred dollars, and the other for the amount of the first mortgage on the land payable to the holder of the note secured thereby. None of the loan, therefore, went to D. B. Allen and wife in cash.

On the same day D. B. Allen and wife executed the note and deed of trust to appellees, and as a part of the same transaction, appellees had appellant to transfer to them the note and deed of trust which he held against D. B. Allen and wife, and for the payment and discharge of which they were advancing the money as aforesaid. This transfer was indorsed below the acknowledgment on the deed of trust in this language: "For a valuable consideration I hereby transfer the within trust deed and note to Smith and Brand. This 2—12—24. [Signed] J. H. Allen." The deed of trust was thereupon delivered to appellees; and appellant, not having the note there in his possession, agreed to deliver it later, but failed to do so.

Appellant went to appellees, and told them that he had bought an ice plant, and could not finance it unless he could realize on this loan due him by his mother and stepfather; that he would not foreclose the mortgage against his mother and stepfather, and thereby turn them out of their home; that they were unable to discharge the mortgage indebtedness, and probably never would be able to do so. He asked appellees to take up the indebtedness for him, and agreed that he would "guarantee I will pay up the loan in two years, if you will get it for them." In other words, he agreed with appellees to take the loan off their hands at the end of two years. Appellees, in consideration of that promise, as well as the execution of a new note by D. B. Allen and wife, covering

the entire indebtedness against their land, secured by a deed of trust thereon, and the further consideration that appellant would transfer and deliver to them the note and deed of trust, which was being discharged by appellees' loan to D. B. Allen and wife, made the loan to the latter.

Appellees, when they filed their bill, conceived that the land covered by their deed of trust might be insufficient in value to pay the mortgage indebtedness, and sought to hold appellant liable for any deficiency, upon two grounds, namely: (1) That his transfer to them of the note and deed of trust which he held against D. B. Allen and wife was in law an indorsement of the note, thereby rendering appellant liable thereon; and (2) that appellant was bound by his verbal promise to take up, and discharge, the mortgage indebtedness of his mother and stepfather to appellees at the end of two years from the date thereof.

Appellant contends: (1) That the transfer of the note and deed of trust did not render him liable thereon as an indorser, but only had the effect of transferring the title thereto; and (2) that under the Statute of Frauds appellant's verbal promise to pay the debt of his mother and stepfather at the end of two years was void, because it was an undertaking to answer for the debts, default, or miscarriage of other persons. We will consider these contentions in the order stated.

The note of D. B. Allen and wife was not a negotiable instrument when transferred to appellees—it was past due. It is true that the holder of a negotiable instrument payable to his order, who transfers it for value without indorsing it, vests in the transferree the title of the transferror, and, in addition, the right to have the indorsement of the transferror. Section 2705 of the Code of 1930. But the transferee's right to the transferor's indorsement does not exist where the paper is nonnego-

tiable, or is payable to bearer, as was the note here involved. Marlar v. Smith, 126 Miss. 842, 89 So. 667.

Appellees argue that the transfer of the note and deed of trust amounted to a general indorsement as defined in section 2722 of the Code of 1930. We think the contention is without merit. That provision of the Negotiable Instruments Act has reference, in the first place, to negotiable paper; and, in the second place, it has reference to an indorser, not a transferor for value of overdue paper. We are unable to see how appellees got anything by the transfer of the note and deed of trust, except the legal title thereto, and a warranty on the part of appellant of their genuineness. 41 C. J., sec. 729, pp. 703, 704, and section 699, p. 683.

The first section of the Statute of Frauds, section 3343 of the Code of 1930, provides, among other things, that an action shall not be brought whereby to charge a defendant to answer for the debt, default, or miscarriage of another person, unless the promise upon which the action is brought, or some memorandum of note thereof, shall be in writing, and signed by the party sought to be charged.

Appellees' answer to the contention that appellant's promise to pay the debt of his mother and stepfather in two years came within the Statute of Frauds is that appellant's obligation was not to answer for the debt of his mother and stepfather, but for his own independent obligation. Appellees argue that the Statute of Frauds does not apply, because five thousand four hundred dollars of the money lent by appellees to appellant's mother and stepfather went to appellant, whose promise to repay the same became appellant's direct and independent obligation, based on a valuable consideration. To sustain their position appellees relied on Home Ins. Co. v. Moore & Rawls, 151 Miss. 189, 117 So. 524; Palmer v. Bridges, 151 Miss. 12, 117 So. 328; Moore v. Kirkland, 112 Miss.

55, 72 So. 855; Sweatman v. Parker, 49 Miss. 19; Olive v. Lewis, 45 Miss. 203; Lee v. Newman, 55 Miss. 365. None of these cases is in point here on its facts. However, the principles laid down in Sweatman v. Parker, and Palmer v. Bridges, we think, are decisive of the question here in favor of appellant's contention. The question to be kept in mind always is whether or not the person making the promise is entering into an original or a collateral obligation. If it be the former, the Statute of Frauds does not apply; if the latter, it does. ' The court in its opinion in the Sweatman case reviewed the authorities on this question, and we think with great ability and clarity analyzed them and laid down the correct rules, which are as follows:

If the party to whom a consideration moves becomes personally liable for the payment of the debt, the promise of any other person to pay it, though the promise be made at the same time, and upon the same consideration, is a collateral undertaking to pay the debt of another, and within the statute. Where the promise to pay the debt of another arises out of some new and original consideration of benefit or harm, moving between the newly contracting parties, it is an original undertaking, and does not come within the statute. The statute does not apply if the consideration springs out of any fresh transaction, or moves to the party promising upon some fresh and substantive ground of personal concern to him. The sort of promise which comes within the statute, and which must be reduced to writing, is a promise to answer for the debt, default, or miscarriage of another person for which that other person himself continues liable. Where a person has received a valuable consideration from either party for the purpose of paying the debt of another, distinct from, and independent of, the original debt, and thereupon promises payment of the original debt, such promise would be an original undertaking, and not within

the Statute of Frauds; "as in the case of being furnished with funds for the purpose of paying the debt."

In the case of Palmer v. Bridges, the court quoted with approval the following language from the Am. L. Inst. Restatements, Contracts (Tent. No. 4), section 179, as follows:

"A promise to perform or otherwise to satisfy all or part of a duty of a third person to the promisee is not within Class 2 of Section 175 (Par. 2, Sec. 3343, Code of 1930), if by the terms of the promise when it is made, performance thereof can involve no more than (a) the application of funds or property then or thereafter put in the hands of the promisor for the purpose; or (b) the performance of any other duty owing, irrespective of his promise, by the promisor to the promisee."

All of the cases relied on by appellees come within one or more of the principles laid down in those two cases.

Applying those principles, we are unable to see how the present case falls without the operation of the statute. Here we have a debt incurred by D. B. Allen and wife to the appellees, secured by a mortgage on the lands of the debtors. In addition, the note and deed of trust formerly held by the appellant on the same land had been by appellant transferred to the appellees as further security for the new indebtedness. At the same time that transaction took place, and as a part thereof, the appellant said to appellees, in effect: "I will myself pay this indebtedness within two years if my mother and stepfather fail to do so." That is what the evidence means— no more, no less. It is true that the five thousand four hundred dollars loaned by appellees to D. B. Allen and wife went to appellant in discharge of his note and deed of trust, but that was no new consideration moving to appellant. On the contrary, the appellant was only getting what was justly and legally due him. It is true that the evidence shows that he was thereby convenienced;

that he needed the money for the purpose of paying for an ice plant that he had purchased, or intended to purchase, but that constituted no new consideration moving to him. Appellant's mother and stepfather owed him five thousand four hundred dollars which was overdue. If appellant had gotten anything from the appellees beyond what was justly and legally due him, there would be some basis for the contention that there was a new consideration moving to the appellant for his promise to repay to the appellees the debt of his mother and stepfather within two years. The appellant had no funds in his hands belonging to D. B. Allen and wife out of which he agreed to pay their debt at the end of two years. The debt of D. B. Allen and wife was not extinguished, but only renewed, and became the right and property of appellees instead of appellant. There was no extinguishment of their indebtedness by virtue of appellant's promise, and they continued liable to appellee for the debt.

We conclude, therefore, that appellant's obligation to pay the debt was not an original and independent obligation based on a consideration moving to him, but was a collateral obligation based on a consideration moving to D. B. Allen and wife alone.

Reversed, and judgment here for appellant.