PEASLEE GAULBERT PAINT & VARNISH CO. *v.*
LUMPKIN, *et al.*

No. 41467 April 18, 1960 119 So. 2d 772

*J. E. Stockstill,* Picayune, for appellant.

*Williams & Williams,* Poplarville, for appellees.

Lee, J.

Peaslee Gaulbert Paint & Varnish Company sued A. L. and Kermit Lumpkin, on an open account, to recover $308.25. The Lumpkins, in their answer, admitted the purchase of the materials in question. However the issue, as developed by the pleadings, was whether or not the plaintiff, to whom the Lumpkins were indebted in the amount sued for, agreed with Quality Paint Company, which was indebted to the Lumpkins in a sum in excess

of $308.25, to transfer the Lumpkin account to Quality Paint Company and look only to it for payment.

The evidence for the Lumpkins was to this effect: They bought the materials from the plaintiff in order to finish the sheetrock construction on a Gulf office building in Harvey, Louisiana, in accordance with their contract with Quality Paint Company, a sub-contractor When the job was finished, Quality Paint Company represented that it was not in financial condition to make full payment for the completed work because it had not been paid by the prime contractor. Since the Lumpkins desired to go to a job in another state, Quality Paint Company proposed to get Peaslee Gaulbert Paint & Varnish Company to transfer to it the Lumpkin account and then pay in cash the balance due the Lumpkins. This arrangement being satisfactory to the Lumpkins, the manager of Quality Paint Company, Mr. Wigram, called Mr. Evans, the manager of Peaslee Gaulbert Paint & Varnish Company in New Orleans, Louisiana, who signified his willingness to accept the substitution. Thereupon Mr. Wigram and A. L. Lumpkin went to the New Orleans office of plaintiff and confirmed with Mr. Evans the agreement to transfer the Lumpkin account to Quality Paint Company and look to it alone for the payment of the account. Following this agreement, Quality Paint Company paid the balance due the Lumpkins, and they went to California to work on another job.

On the contrary, E. H. Whitten, testifying for the plaintiff, said that no man by the name of Evans worked for the company; that a man by the name of Nash was manager of the store at the time the account was made; but that he himself was the general manager and was the only employee with authority to make decisions. He said that he sold paint for the company, and, at times, he would be out of the store for several days at a time. He stated that one of the Lumpkins, about the time that they were leaving for California, called him and "asked me would I transfer the account or would I let Mr. Wig-

gins (Wigram) pay the account, * * * and I said it was agreeable for Mr. Wiggins (Wigram) to pay the account, and that is all.'' He further said that he did not advise that he was going to transfer the Lumpkin account to Quality and hold it alone responsible. Nash, who, according to the evidence for the defendants, introduced A. L. Lumpkin to Evans at the store as the general manager at the time of his purchase of the materials, did not testify.

The cause was submitted to a jury, which found a verdict for the defendants; and from the judgment entered, the plaintiff appealed.

The appellant maintains that neither the answer nor the evidence of the defendants disclosed an agreement in writing between the parties, and that the alleged agreement was therefore within the statute of frauds, Section 264, Code of 1942 Rec. It cites Allen v. Smith & Brand, 160 Miss. 303, 133 So. 599, and Harris v. Griffin, 226 Miss. 74, 83 So. 2d 765.

In Allen v. Smith & Brand, supra, J. H. Allen was being sued because, at the time the loan was made, he agreed orally that ''I will myself pay this indebtedness within two years if my mother and stepfather fail to do so.'' In other words, the appellees in that case were seeking to hold Allen for the debt of his mother and stepfather solely on his oral promise. Obviously such an undertaking was within the statute of frauds. To have been effective, the promise necessarily would have had to be in writing.

In Harris v. Griffin, supra, Griffin sued Harris for the damage to his automobile because Harris appeared on the scene following a collision between the automobiles of Griffin and Daisy Martin, and, in interceding for Daisy, said: ''I will see that everything is taken care of.'' This oral promise, of course, was within the statute of frauds, and the suit could not prevail.

 In the present cause, Quality Paint Company, which, according to the evidence for the appellees, as-

sumed the debt of the Lumpkins, was not a party to this litigation. The statute of frauds is a right available to the party to an oral contract against whom enforcement is sought by the other party. The defense is a personal one. ■■ The plaintiff cannot invoke the statute for a defendant. See 49 Am. Jur., Statute of Frauds, Secs. 588 and 592, pp. 896 and 901-2.

The contract of substitution, if consummated, constituted a novation. 39 Am. Jur., Novation, Sec. 4, p. 256. See also Greenwood Leflore Hospital Comm. v. Turner, 213 Miss. 200, 56 So. 2 496; Allen v. Smith & Brand, supra; American Blakeslee Mfg. Co. v. Martin & Son, 128 Miss. 302, 91 So. 6.

■■ It was not necessary for Quality Paint Company to sign a writing for the purpose of showing the consideration. See 39 Am. Jur., Novation, Sec. 10, p. 258, which says in part: "The courts hold that an agreement whereby a new debtor is substituted for an old one and the old obligation discharged is not a mere promise by the new debtor to be responsible for the debt of his creditor and to pay it, but a promise by him to pay his own debt in that particular way. It is a promise founded on a new and sufficient consideration moving to the promisor from the debtor at the time the promise was made, and such a promise or agreement is an original undertaking not within the statute of frauds, *and no note or memorandum in writing, expressing the consideration, and subscribed by the party to be charged therewith, is required.*" (Emphasis supplied).

■■ Since the evidence was in sharp dispute, it presented an issue for the jury. See 39 Am. Jur., Novation, Sec. 31, pp. 271-2, as follows: "The usual rules determining the character of issues as to law or fact in civil actions apply in actions on contracts of novation. Thus, it has been held that whether it was the intention of the parties to a transaction to effect a novation is ordinarily a question of fact, as where the evidence is conflicting or the terms of the agreement are equivocal or

uncertain. But where there is no doubt as to the terms of an agreement, the question whether it effects a novation is one of law for the court. Whether there has been a consent of all the parties sufficient to constitute a novation has been held to be a question for the jury." See also American Blakeslee Mfg. Co. v. Martin & Son, supra, where the evidence was held to be sufficient to submit the issue of novation to a jury. See 39 Am. Jur., Novation, Sec. 34, p. 273, as to the weight and sufficiency of the evidence.

The appellant assigns a number of other alleged errors. These have all been carefully considered. However, they do not possess sufficient merit to call for a response.

The judgment of the trial court must therefore be affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Holmes* and *Ethridge, JJ.,* concur.