191 So.2d 399 (1966)
MISSISSIPPI RICE GROWERS ASSOCIATION (A.A.L.)
v.
James F. PIGOTT, d.b.a. Manufacturers' Warehouse Service.
No. 44123.
Supreme Court of Mississippi.
October 31, 1966.
*401 Cox, Dunn & Clark, Jackson, Alfred A. Levingston, Cleveland, for appellant.
Overstreet, Kuykendall, Perry & Phillips, Jackson, for appellee.
RODGERS, Justice.
This is a suit brought by James F. Pigott, doing business as Manufacturers' Warehouse Service, appellee, against the Mississippi Rice Growers Association (A.A.L.), appellant, for warehouse charges growing out of the storage of rice belonging to the members of the appellant-corporation. The suit was tried in the Circuit Court of the First Judicial District of Hinds County, Mississippi, resulting in a directed verdict and judgment in favor of appellee in the amount of 6,606.74, with legal interest from the date of the judgment.
The defendant in the trial court, appellant here, has set out and argued in its brief five assignments of error alleged to have occurred in the trial court: (1) Appellee failed to prove his case, (2) if there were a contract to store rice, it was barred by the Statute of Frauds, (3) appellant is entitled to plead the Statute of Frauds, (4) the case was a stale case and should have been dismissed, and (5) the trial court erred in refusing to permit one of the appellant's witnesses to remain in the courtroom.

I
The appellant is a corporation, organized and chartered under the "Agricultural Association Law" (A.A.L.), Mississippi Code Annotated section 4475 et seq. (1956), with its principal office in the Second Judicial District of Bolivar County, Mississippi. The appellee, J.F. Pigott, is the owner and operator of a warehouse in the City of Jackson, Mississippi. On May 19, 1955, Mr. Joe Mallory, General Manager, and Mr. Rex Kimbriel, President of the appellant-corporation, came to Jackson, Mississippi, in search of storage space for rice grown by members of the appellant-corporation. They entered into negotiations with the appellee, J.F. Pigott, in an effort to obtain storage space "identity preserved"; that is to say, a place of storage where the rice grown by each member could be stored so as to be identified and so that separate warehouse receipts could be issued in the name of each grower. The amount to be charged by the warehouse was discussed, including the cost of thirty-five cents per barrel "storage and handling-in-charges", fifteen cents per barrel for sacking and twenty cents for each sack. The appellant wanted to store the rice from September 1954 to March 1, 1955.
The officers of the Association and Mr. Pigott discussed the probability that the rice would be sold to a government agency, under a loan agreement, and that the government would probably pay the "handling-out-charges", although it was considered that the handling-out-charges were customarily paid at the time the product was stored. Appellee contends that the Association agreed to pay handling-out-charges if the rice were sold on the open market, but if sold to the government the warehouseman would attempt to collect the handling-out-charges from the government. Appellee contends that it was agreed that if the government refused to pay the charges the Association would pay them. One hundred and sixty-two warehouse receipts were issued in the names of individual rice growers, members of the Association. These warehouse receipts were delivered to the appellant corporation. The storage charges, "handling-in-charges", and charges for sacks, were billed to, and paid by, the corporation. The Rice Growers Association, however, refused to pay handling-out-charges and cost of inspection by government inspectors.
*402 The testimony reveals that the government agency would not buy the rice from the appellant or its members until the rice was inspected and resacked, and this inspection cost one and one-half cents per hundred. Mr. Pigott paid an inspection fee of $1,711.32 to the Commodity Credit Corporation of New Orleans for this inspection. Some of the rice stored was sold to individuals. Handling-out-charges of $544.83 and inspection charges of $204.33 were paid by individual rice owners. Pursuant to the aforementioned arrangement, more than 11,000,000 pounds of rice were stored with J.F. Pigott, on which there was due to appellee unpaid "handling-out-charges" of four cents per hundred, or the total sum of $4,563.53.
The appellee claims that the appellant-corporation owes the foregoing sum for handling-out-charges, plus $1,711.72 for inspection charges, less $749.16 paid by individuals, or the sum of $5,544.78, with legal interest from June 1, 1955.
The first contention of appellant is simply that there was no contract between appellant and appellee, whereby the Mississippi Rice Growers Association agreed to pay the charges claimed by appellee; that, in fact, the rice stored did not belong to the Association, that it belonged to the individual members of the Association. Thus, it is contended that if there are unpaid charges, these charges are owed by the individual rice producers and not by the appellant-corporation.
The record shows that a contract to store goods and products in a warehouse is usually made orally and that it is customary in the warehouse business for the handling-out-charges to be paid at the time the commodity moves into the warehouse. On the occasion here involved, however, Mr. Pigott offered evidence to show that there was an agreement with the Association to defer this payment of handling-out-charges. The record further reveals that Mr. Pigott, Mr. Mallory and Mr. Kimbriel reached an understanding that the handling-out-charges due the warehouse would not be collected at the time the rice was moved into the warehouse, but this charge would be delayed until the rice was moved out of the warehouse. It was understood that the warehouseman would attempt to collect these charges from the government agency purchasing the rice, but in the event of a sale of rice on the market to an individual, the handling-out-charges would be paid by the Mississippi Rice Growers Association and charged to the owners. Moreover, from the whole record it is apparent that Mr. Mallory and Mr. Kimbriel agreed that in the event the government agency refused to pay the handling-out-charges, the Rice Growers Association would pay this charge.
Thus, it is apparent that the trial court was correct in holding that there was an oral contract between the warehouseman, Mr. Pigott, and the Manager and President of the corporation, that the corporation would pay the handling-out-charges and assess these charges to each of the contributing rice growers. We are therefore of the opinion that the contract was sufficient to charge the Association with the handling-out-charges, and this is particularly true in view of the fact that the corporation actually paid the storage charge up to and including the sacking of the rice.
In Jones v. McGahey, Miss., 187 So.2d 579, 584 (1966), we said:
"A contract is sufficiently definite if it it contains matter which will enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence. Having found a contract to have been made, an agreement should not be frustrated where it is possible to reach a reasonable and fair result." (Citing authorities.)
As a general rule, the courts are required to ascertain and give effect to the common intention of the parties in their interpretation of a contract. This is *403 the essence of a contract. It is pointed out in 17 C.J.S. Contracts § 32 (1963), that:
"Manifestation of mutual assent is an essential prerequisite to the creation of a contract. In determining whether a contract exists, it is incumbent on the court to try to arrive at the intention of the parties, which must be determined in the light of existing circumstances. The general rule governing the interpretation of admitted contracts, which are discussed infra §§ 294-372, apply also where the controversy is whether there is a contract.
"The apparent mutual assent, essential to the formation of a contract, must be gathered from the language employed by them, or manifested by their words or acts, and it may be manifested wholly or partly by written or spoken words or by other acts or conduct."
This Court quoted from the above-mentioned textbook in the case of Hill v. Capps, 248 Miss. 601, 160 So.2d 186 (1964). That case involved the question of whether or not an oral contract had been consummated, and the Court pointed out that the assent of the parties in the formation of a contract must necessarily be gathered from their words, acts and outward expressions.
In the case of In re Whittington's Estate, 217 Miss. 457, 64 So.2d 580 (1953), this Court held that where the making of an oral contract is in dispute, all of the acts and declarations of the parties tending to establish or refute it are admissible in evidence.
In the case of Rubel v. Rubel, 221 Miss. 848, 865, 75 So.2d 59, 65, 47 A.L.R.2d 1410 (1954), this Court said:
"The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles. 17 C.J.S., Contracts, § 295a, page 689; United States Fidelity Guaranty Co. v. Parsons, 154 Miss. 587, 122 So. 544; Grissom v. Livingston, 213 Miss. 424, 57 So.2d 144; and in the case of Copiah Hardware Co. v. Johnson, 123 Miss. 624, 86 So. 369, this Court said that `the intention of the parties must be collected from the whole agreement, and every word therein must be given effect, if possible, and be made to operate according to the intention of the parties.' It is also well settled that the words of a contract should be given a reasonable construction, where that is possible, rather than an unreasonable one; and the court should likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. 17 C.J.S., Contracts, § 319, page 739; Citizens' Bank v. Frazier, 157 Miss. 298, 127 So. 716. `Constructions of contracts which would make them unfair or unjust are to be avoided, unless the terms are unambiguous and express.' McCain v. Lamar Life Ins. Co., 178 Miss. 459, 172 So. 495, 500."
We are of the opinion that the great weight of the testimony in this case is to the effect that the appellee, Pigott, and the appellant, Mississippi Rice Growers Association, entered into a contract and that the appellant agreed to pay the handling-out-charges in the event the government did not pay the warehouseman, J.P. Pigott.

II
The appellant next contends that even though there was a contract or verbal agreement, it was an agreement squarely covered by the Statute of Frauds.
Appellant cites Mississippi Code Annotated section 264 (1956), wherein it is said:
"An action shall not be brought whereby to charge a defendant or other party:
"(a) Upon any special promise to answer for the debt or default or miscarriage of another person; * * *

*404 "Unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized in writing."
Appellant contends that the agreement executed by the corporation was a special promise to answer for the debt or default, or miscarriage of another person (its members), and thus is barred by the Statute of Frauds. The appellant originally took a position that this action was barred by the Statute of Frauds because the promise was an oral agreement to answer for the debt or default of the Commodity Credit Corporation. Appellant's brief now is to the effect that the statute is applicable because the rice belonged to the farmer-producers and not to the Rice Growers Association. This argument is based primarily upon the fact that Mr. Pigott used the words "that I would be reimbursed" by the corporation. We are of the opinion that the Statute of Frauds does not apply because, taking the whole testimony, and the surrounding circumstances, it is obvious that the corporation paid all of the charges except the handling-out and the inspection charges, and there was no contract with the individual rice growers as to the handling-out-charges. Moreover, Mr. Mallory's testimony is to the effect that "if the charges went back to the Association, the Association would then in turn charge the farmer, or if it went the other way the same thing * * *." The great weight of the testimony in this case shows that the warehouse charges were made, not against the individual rice growers or against the government agency, but were made against the Association which entered into the arrangement for the charges and the agreement to pay therefor.
The textwriter points out in 37 C.J.S. Statute of Frauds § 14 (1943) that:
"In order to bring an oral promise to answer for the debt, default, or miscarriage of another within the prohibition of the statute it is essential that there should be a binding and subsisting liability or obligation on the part of a third person to the promisee which such oral promise undertakes to discharge, and to which it is collateral."
There was no contract made with a third party as to the charges in this case.
The appellant cites the case of Allen v. Smith & Brand, 160 Miss. 303, 133 So. 599 (1931), in which this Court held that an oral promise to pay a note executed by the promisor's mother and father was within the Statute of Frauds because there was no "new consideration moving to the [promisor]." This Court said, however:
"The question to be kept in mind always is whether or not the person making the promise is entering into an original or a collateral obligation. If it be the former, the Statute of Frauds does not apply; if the latter, it does. * * *
"If the party to whom a consideration moves becomes personally liable for the payment of the debt, the promise of any other person to pay it, though the promise be made at the same time, and upon the same consideration, is a collateral undertaking to pay the debt of another, and within the statute. Where the promise to pay the debt of another arises out of some new and original consideration of benefit or harm, moving between the newly contracting parties, it is an original undertaking, and does not come within the statute. The statute does not apply if the consideration springs out of any fresh transaction, or moves to the party promising upon some fresh and substantive ground of personal concern to him. * * *" 160 Miss. at 311, 133 So. at 601, 602.
The Manager and President of the appellant-corporation either acted for the corporation, or acted for the individual rice growers. There is nothing in this record to indicate that the individual rice growers *405 ever had any contact whatsoever with the warehouseman. We are of the opinion from the testimony in this record that the Manager and President of the appellant-corporation acted for the corporation, and not on a verbal collateral agreement to stand for the debt or default of the individual rice growers, nor for the debt of the Commodity Credit Corporation. They acted for and on behalf of the appellant, Mississippi Rice Growers Association. It was not necessary for the contract to be in writing since the corporation did not stand for the debt, default or miscarriage of another person, and the facts in this case do not bring this case within the meaning of the statute. We are therefore of the opinion that the Statute of Frauds does not apply in this case.

III
Appellant contended that it was entitled to a change of venue to Bolivar County upon the motion of the Association during the trial. However, since it is admitted that the appellant is a corporation, we are of the opinion that it was not entitled to a change of venue from Hinds County where the contract was made. See Ainsworth v. Blakeney, 232 Miss. 297, 98 So.2d 880 (1957).

IV
Before the trial, the court twice dismissed the case as a stale case. It was then reinstated, as shown by its order, wherein the court said: "the delay in prosecution was the result of complications beyond the control of the plaintiff and counsel." The appellant complains that the case was reinstated without notice to the Rice Growers Association and without a hearing in which the Rice Growers Association participated, and that the action of the court was unfair to the appellant. The appellant had previously agreed in Federal Court that it waived the Statute of Limitation provided the action commence within one year after the order of that court. Thus it is contended that the appellant was required to waive its right to plead the Statute of Limitation from time to time as the case was reinstated by the circuit court without its knowledge. The appellant complains that it should have been permitted to have examined its adversaries as to why it had not proceeded with the case before the appellee was permitted by the court to reinstate the case. It is asserted that such a requirement would certainly be consistent with Mississippi Code Annotated section 1578 (1956).
We are of the opinion that a trial court can reinstate any case during that term of court, or change any order entered at that term of court, for any reason satisfactory to the court without notice to the adverse party.
In the case of Ross v. Milner, 194 Miss. 497, 506, 12 So.2d 917, 918 (1943), we pointed out:
"It will be noted that the statute does not provide for notice to be given of the clerk's motion to dismiss. The failure to require such notice is evidently because of the fact that the interested parties are presumed to be before the court in cases pending on the active docket and are cognizant of what action is being taken or is proposed to be taken in their cases, and are, therefore, afforded opportunity to show `good cause' to the contrary * * *."
In the case of Planters' Lumber Company v. Sibley, 130 Miss. 26, 35, 93 So. 440, 441 (1922), where the plaintiff had taken default judgment on the second day of the term, and later in the term the judgment was set aside on petition by defendant without notice to the plaintiff, this Court said:
"A judgment by default may be set aside during the term in which it was rendered, at the request of either party thereto, without notice to the party in whose favor it is rendered, and we cannot say *406 that the court below erred in holding that the defendant's attorneys were not negligent in failing to file his plea when due."
In the case of Howie v. Baker, 232 Miss. 661, 665, 100 So.2d 113, 115 (1958), this Court pointed out that:
"The reinstatement at the same term of court of a dismissed cause must be left, in large measure, to the discretion of the court. Matters of which the court may be aware, because of their observation during the trial, may not be reflected in the evidence, and yet they may constitute a compelling reason for the award of a new hearing."
This was a case in the chancery court but we are of the opinion that the same rule applies here.
Just as the court may dismiss an action for want of prosecution, so it may, in its discretion, vacate or refuse to vacate an order of dismissal, and such order will not be reversed by the Supreme Court on appeal, unless there has been a manifest abuse of discretion. Chalkley v. Henley, 178 Ark 635, 12 S.W.2d 18 (1928); Annot. 80 A.L.R.2d 1399, 1402 (1961).

V
The appellant contends that the court erred in refusing to permit Mr. Rex Kimbriel to remain in the courtroom after the rule had been invoked excluding witnesses from the hearing of the trial. Mr. Kimbriel had been president of the appellant-corporation at the time the arrangements were made to store the rice in the appellee's warehouse. Mr. Kimbriel was, however, no longer an officer of the corporation. Defendant felt that the corporation was entitled to have a representative in the courtroom during the trial. The trial court was of the opinion that since Mr. Kimbriel was no longer an officer in the corporation, he could not represent it in the sense of making decisions or recommendations during the trial of the case, and was, therefore, simply a witness and should be excluded from the courtroom with the other witnesses.
The appellant cited the case of Bernheim v. Dibrell, 66 Miss. 199, 202, 5 So. 693 (1889), wherein the Court said: "The rule of court by which witnesses are excluded from hearing the testimony delivered by other witnesses does not apply to parties to the cause * * *." However, since Mr. Kimbriel was not a party to the cause nor an officer in the corporation, this does not apply to the facts in the case now before the Court.
The record in this case shows that the rule of court excluding witnesses from the hearing of the testimony was invoked by appellant, as it had a right to do, (Holcomb v. City of Clarksdale, 217 Miss. 892, 65 So.2d 281, 1953). This required the court to send the witnesses for plaintiff and defendant out of the hearing of the court unless there was some reason why a certain witness should not be excluded from the courtroom.
We do not believe that the ruling of the court in excluding the witness Kimbriel was error in the instant case for two reasons: First, where a corporation is a party, it is not error to refuse to permit an officer or employee thereof to remain for the purpose of advising counsel during the trial unless it appears from the record that he has been put in control of the litigation and can make decisions with reference thereto. 88 C.J.S. Trial § 67 (1955). Second, although parties to a litigation will not be excluded under the rule, one who is not an officer in the corporation or party in interest, but is a witness, may properly be excluded. 88 C.J.S. Trial § 68 (1955).
We have reached the conclusion that errors assigned by appellant are not well-taken, and that the trial judge properly directed *407 a verdict in favor of appellee for handling-out-charges of four cents per hundred weight, or $4,018.70, plus six per cent interest from June 1, 1955.

CROSS BILL
After both sides had rested, the trial judge granted a peremptory instruction in favor of appellant, denying the appellee warehouseman reimbursement for inspection fee charges in the sum of $1,506.99. This was alleged to be due him for money paid to a government agency for an inspection required by the government prior to purchase. The appellee-warehouseman based this claim on an alleged custom requiring a warehouseman to take care of the product placed in storage in the warehouse. It is contended that this claim is similar to a claim for services in protecting stored goods. Appellee admitted, however, there was no agreement on the part of the Mississippi Rice Growers Association to pay this charge, and admitted that this charge was not anticipated at the time the contract was made to store the rice.
The rule that a warehouseman is entitled to be reimbursed for reasonable sums expended to conserve and protect stored property is not applicable in the instant case. This rule does not apply where the evidence shows that the expenditure was made without the consent of the owner and was not made under the customary trade usage for the protection of the stored property. Farmers' Union Warehouse Co. v. Sturdivant, 127 Ark. 453, 192 S.W. 377 (1917). The trial court was therefore correct in denying the claim of inspection charges paid by the warehouseman.
We conclude that the judgment of the trial court was correct and should be affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur.