**VALLEY CEMENT INDUSTRIES, INC.,**
Plaintiff-Appellant,

v.

**MIDCO EQUIPMENT COMPANY,**
Defendant-Appellee.

No. 76–3370.

United States Court of Appeals,
Fifth Circuit.

April 6, 1978.

Rehearing Denied May 22, 1978.
See 573 F.2d 308.

Vardaman S. Dunn, Jackson, Miss., for plaintiff-appellant.

Lawrence J. Franck, Jackson, Miss., for defendant-appellee.

Before HILL, RUBIN and VANCE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue presented in this diversity case is whether the plaintiff's 1972 suit on a credit memorandum issued to it in 1958 by the defendant is barred by Mississippi's statute of limitations or by laches. The plaintiff appeals from a judgment below holding that it was, and we affirm.

Mississippi Valley Portland Cement Co. ("Mississippi Valley"), now the plaintiff, Valley Cement Industries, Inc. ("Valley Cement"), was incorporated in 1957 for the purpose of manufacturing and selling cement. In return for a number of shares of the plaintiff's stock, on January 31, 1958, Euclid-Memphis Sales, Inc. ("Euclid"), a Tennessee equipment dealership owned and controlled by a major stockholder and director of Mississippi Valley,[1] issued a credit memorandum to Mississippi Valley for a 35 per cent down payment on $200,000 of new Euclid equipment "to be delivered at a future date." Sometime prior to 1961, this memorandum was modified by an oral agreement to allow the plaintiff a 25 per cent discount on equipment other than new Euclid equipment.

In 1958, Mississippi Valley purchased equipment from Euclid and, in accordance with the agreement, $39,066 was credited against the credit memorandum. Although Mississippi Valley, later Valley Cement, continued to carry the memorandum as an asset on its books, and corresponded with Euclid and its owner concerning the memorandum in 1961 and 1963, it made no further attempt to apply the credit to a purchase of Euclid equipment until 1972. On August 28, 1972, Valley Cement notified the defendant that it intended to use the balance of its credit for the purchase of equipment; the defendant refused to honor the memorandum, and this suit for the balance followed.

The question whether Valley Cement's 1972 suit was barred by Mississippi's six-year statute of limitations, Miss.Code of 1972, § 15–1–49 (Miss.Code of 1942, § 722),[2] turns on when the limitations period commenced running. We are thus required to consider when the "cause of [the plaintiff's] action accrued." Valley Cement urges that the cause of action accrued with the refusal of its demand in 1972 because the parties contemplated that an actual demand would be prerequisite to the enforcement of Euclid's obligation, and they intended that Valley Cement would enjoy an indefinite period in which to make a demand. The court below found, however, that the parties did not intend to permit an indefinite delay in Mississippi Valley's demand for performance.

■ The principles governing this case are elementary. In interpreting the parties' contract, a court is bound to give effect to the intentions of the parties. *Mississippi Rice Growers Assn. v. Pigott,* Miss.1966, 191 So.2d 399, 402–403. Such intentions are to be drawn as much as possible from the language of the agreement, but where, as here, the agreement is silent on the issue, the court may turn to extrinsic evidence for support. *Barnett v. Getty Oil Co.,* Miss.

---

1. Euclid-Memphis Sales, Inc. later merged into the present defendant, Midco Equipment Co. The parties have stipulated that Midco succeeded to whatever obligations Euclid would have had in 1972 under its 1958 memorandum.

2. Miss.Code of 1972, § 15–1–49 (Miss.Code of 1942, § 722), provides:

   All actions for which no other period of limitation[s] is prescribed shall be commenced within six years next after the cause of such action has accrued, and not after.

1972, 266 So.2d 581; *Hoerner v. First National Bank of Jackson,* Miss.1971, 254 So.2d 754; *Mississippi Rice Growers Assn. v. Pigott, supra.*

The interpretation of a contract is a question of fact. *Hadad v. Booth,* Miss. 1955, 225 Miss. 63, 82 So.2d 639; *Dobson v. Masonite Corp.,* 5 Cir. 1966, 359 F.2d 921. Where a lower court is the trier of facts, this court may determine on appeal only whether the lower court's findings pass muster under the "clearly erroneous" standard. *Chaney v. City of Galveston,* 5 Cir. 1966, 368 F.2d 774. Our role is thus limited even in reviewing factual inferences, such as inferences with respect to intent, that are drawn from undisputed basic facts. *Chared Corp. v. United States,* 5 Cir. 1971, 446 F.2d 745.

Ample evidence exists to support the trial judge's conclusion that the parties, at the time of contracting, did not contemplate that Mississippi Valley would enjoy an indefinite period within which to demand performance of Euclid. The plaintiff's own admission that it expected its immediate equipment needs in 1958 to exhaust Euclid's credit supports the court's conclusion.

Valley Cement urges that it behaved from 1958 to 1972 in a manner consistent only with the conclusion that it had a claim on Euclid for the indefinite future. Further, it argues that Euclid is bound by Valley Cement's intentions because a Valley Cement director and shareholder, R. A. Trippeer, Sr., also the owner of Euclid, knew of and acquiesced in Mississippi Valley's understanding. The court below found that the evidence with regard to Mr. Trippeer's knowledge, acquiescence, and intentions subsequent to the agreement was conflicting. But Valley Cement's argument also fails because the behavior of both Val-

ley Cement and Mr. Trippeer is relevant to the interpretation of the contract only as it bears on the parties' intentions at the time of contracting. The trial court was not clearly erroneous in finding that the parties did not contemplate an indefinite delay. Thus, even if Euclid were bound by Trippeer's knowledge, the information he had when the contract was executed was, by necessary implication, that performance of the contract was not to be postponed for an indeterminate time.

Assuming, as we do, that the period for demand was not indefinite, the next question arises: When did the statute begin to run? On its face, the credit memorandum most resembles a demand note in exchange for stock, thus inviting the conclusion that the statute commenced running when the memorandum was executed. *Cf., United States Fidelity & Guaranty Co. v. Krebs,* Miss.1966, 190 So.2d 857. However, we need not decide to what degree the analogy to a demand note is exact because, even if the statute commenced running at the expiration of a reasonable period of time within which to make a demand, that period certainly expired more than six years before Valley Cement's 1972 suit. Mississippi Valley made no attempt to use the credit between 1958 and 1972, nor did it communicate with Euclid at all concerning the credit between 1963 and 1972.

We have reviewed Valley Cement's arguments that the credit should be viewed as property held in trust, and that the statute of limitations was tolled under Miss. Code of 1972, § 15–1–63 (Miss.Code of 1942, § 740),[3] until Euclid's successor corporation first qualified in 1968 to do business in Mississippi. The former conclusion is compelled neither by the Mississippi statute that the plaintiff cites, Miss.Code of 1942, § 5327,[4] *see, Sterling Varnish Co. v. Sonom*

---

**3.** Miss.Code of 1972, § 15–1–63 (Miss.Code of 1942, § 740), provides:

> If, after any cause of action has accrued in this state, the person against whom it has accrued be absent from and reside out of the state, the time of his absence shall not be taken as any part of the time limited for the

commencement of the action, after he shall return.

**4.** Miss.Code of 1942, § 5327, repealed in 1962, provided:

> A note, obligation, or security of any kind given or transferred by any subscriber for stock in any corporation shall not be con-

*Co.*, Miss.1961, 241 Miss. 810, 133 So.2d 624, nor by the fact that Mr. Trippeer was both a director of Mississippi Valley and president of Euclid. The plaintiff's tolling argument is raised for the first time on appeal and cannot now be considered except to prevent a miscarriage of justice, *Alabama Great Southern Railroad Co. v. Allied Chemical Corp.*, 5 Cir. 1974, 501 F.2d 94, 103.[5] No such abortion has been evidenced.

Consequently, the judgment of the trial court is

AFFIRMED.

---

sidered, taken, or held as payment of any part of the capital stock of the company.

**5.** In connection with the plaintiff's argument, *see also, French v. Davis,* 1859, 38 Miss. 218, and *U. S. F. & G. v. Ransom,* 1941, 192 Miss. 286, 292–293, 5 So.2d 238, 240, in light of Mississippi's long-arm statute, Miss.Code of 1972, § 13–3–57 (Miss.Code of 1942, § 1437).