NASSAU TERRACE CONDOMINIUM ASSOCIATION, INC., Plaintiff-Appellant, v. S. SAUL SILVERSTEIN *et al.*, d/b/a Commercial Coin Laundry Systems, Defendant-Appellee.

First District (3rd Division)   No. 1—88—0533

Opinion filed April 12, 1989.

William A. Torok, of Chicago, for appellant.

Russel G. Winick, of Schultz & Winick, of Chicago, for appellees.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Nassau Terrace Condominium Association, Incorporated, filed an action in two counts, seeking a declaration that two leases it has with defendant Commercial Coin Laundry Systems (hereinafter Commercial), a partnership, are null and void and that it is entitled to possession of the demised premises. In count I of the complaint, plaintiff alleged that the leases were never assigned from the original lessor, Gregory Prena, to succeeding owners of the property or to plaintiff and, consequently, plaintiff is not bound by the terms of the leases. In count II of the complaint, plaintiff alleged that the leases were executed by Larry Talman as agent of defendant Commercial. Plaintiff further alleged that defendants S. Saul Silverstein, Enoch Silverstein and Commercial have "not supported agent's authority to enter into such two leases in writing," and the leases are null and void under the Statute of Frauds (Ill. Rev. Stat. 1987, ch. 59, pars. 1, 2).

The evidence adduced at trial follows.

On November 10, 1975, Gregory Prena, as lessor, and defendants, as lessees, entered into two leases. Under the terms of the leases, Mr. Prena leased to the defendants the laundry rooms or laundry areas in the buildings commonly known as 12542-48 and 12550-58 Fairview Avenue, Blue Island, Illinois (hereinafter the Premises). Defendant agreed to equip the Premises with washing and drying equipment and to operate the equipment for use of the tenants in the buildings. Defendants also agreed to pay $4,000 to Mr. Prena to reimburse him for improvements made to the Premises and to pay 15% of the receipts from the washing and drying equipment as rent for the Premises. Mr. Prena warranted in the leases that he was the owner of the buildings and that the leases would be binding upon all future owners of the buildings, and upon his heirs, executors, and assigns. Thus, the leases provide that "[i]t is the intention of the parties hereto that this Lease run with the land and buildings hereinabove described."

Larry Talman, a salesman for Commercial, and Ernest Zurkowski, a former sales manager for Commercial, signed the leases on behalf of Commercial. Defendant S. Saul Silverstein, one of the two partners operating Commercial, testified that Mr. Talman and Mr. Zurkowski were authorized to enter into leases on behalf of Commercial. However, on cross-examination, Mr. Silverstein testified that he did not have anything in writing to show the authority of Mr. Talman and Mr. Zurkowski to execute the leases.

Mr. Silverstein testified that Commercial paid $4,000 to Mr. Prena in 1975, as required by the leases. Up to the date of trial, Commercial

has tendered rentals to plaintiff which have been accepted. Mr. Silverstein also testified that the parties to the leases intended that the covenants in the leases run with the land and bind future owners of the property.

On August 20, 1979, Gregory Prena sold the property to the Exchange National Bank as trustee under trust No. 35651 (hereinafter the Exchange National Bank).[1] The Exchange National Bank then converted the property to condominiums and, on March 25, 1980, registered a declaration of condominium ownership. Also on March 25, 1980, the Heritage County Bank and Trust Company (hereinafter the Heritage Bank) registered a mortgage on 18 of the condominium units. That mortgage was foreclosed by the Heritage Bank, and on May 17, 1983, the Heritage Bank purchased the units at a sale held by the sheriff of Cook County.

At the conclusion of the trial, the court entered judgment in favor of defendants and against plaintiff on both counts of the complaint. The court determined that the covenants in the leases run with the land and are binding upon plaintiff. The court also determined that, to the extent plaintiff had any right to terminate the leases, plaintiff waived its right when it accepted rentals from defendants. Consequently, the court found that defendants are entitled to possession of the demised premises. The court also found that plaintiff failed to offer any evidence to support count II of the complaint. We will consider the court's holding on each count in turn.

■ In order for a covenant to run with the land, three criteria must be met: (1) the covenantor and the covenantee must have intended the covenant to run with the land; (2) the covenant must touch and concern the land; and (3) there must be privity of estate between the party claiming the benefit of the covenant and the party resting under the burden of the covenant. *Streams Sports Club, Ltd. v. Richmond* (1983), 99 Ill. 2d 182, 188, 457 N.E.2d 1226; *St. Paul Federal Bank for Savings v. Wesby* (1986), 149 Ill. App. 3d 1059, 1063, 501 N.E.2d 707.

■ ■ In *Streams Sports Club*, the Illinois Supreme Court observed that covenants should be interpreted to give effect to the actual intent of the parties at the time the covenant was made. (*Streams Sports Club*, 99 Ill. 2d at 188.) The intent of the parties can best be determined by express contractual provisions. (*Streams Sports*

---

[1] The record indicates that the beneficiaries of the trust are Frank Adams and Condo Conversion Corporation. In this opinion, we will treat the trustee and beneficiaries as one, and all references will be to the Exchange National Bank.

*Club*, 99 Ill. 2d at 188.) In the present case, it is clear that Commercial and Mr. Prena, the parties to the leases, intended that the covenants run with the land. Each lease provides that "[it] will be binding upon all future owners, and the heirs, executors, and assigns of the Lessor." Each lease also provides that "[i]t is the intention of the parties hereto that this Lease run with the land and buildings hereinabove described." In addition, defendant S. Saul Silverstein testified that the parties to the leases intended that the covenants run with the land and bind future owners of the property. We therefore conclude that the parties intended that the covenants in the leases run with the land.

■■ The second requirement for a covenant running with the land is also met because the covenant touches and concerns the land. Plaintiff instituted this action to regain possession of the Premises. Thus, the covenant at issue is that Commercial have possession of the Premises to operate washers and dryers for use of the individual condominium owners. Possession of the Premises is obviously necessary for enjoyment of the leasehold estate conveyed to Commercial. Also, the operation of the washers and dryers benefits the condominium owners and increases the value of the property. We conclude that possession of the Premises by Commercial and operation thereon of laundry facilities affects the use, value and enjoyment of the leasehold estate and of the property, and the covenant touches and concerns the land.

■■ The covenant also meets the third requirement for a covenant running with the land—that is, there is a chain of privity between Commercial, the covenantee, and the condominium owners,[2] the parties to be bound by the covenant. A lease creates a privity of contract and a privity of estate between the lessor and the lessee. (24 Ill. L. & Prac. *Landlord & Tenant* §21 (1980); 49 Am. Jur. 2d *Landlord & Tenant* §1 (1970).) Thus, a privity of estate existed between Commercial and Mr. Prena, the original lessor and covenantor. A privity of estate also exists between the grantor and the grantee of property (*Creighton v. Elgin* (1946), 395 Ill. 87, 101, 69 N.E.2d 501 (grantee is in privity with grantor); *Ely v. Brown* (1899), 183 Ill. 575, 597, 56

---

[2] We do not know whether plaintiff claims an interest in the property or whether plaintiff is acting solely as the representative of the condominium owners. If plaintiff does have an interest in the property, plaintiff should be bound by the covenant because plaintiff would have taken its interest from the Exchange National Bank, a successor to the original covenantor. If plaintiff is acting in a representative capacity, plaintiff should comply with the covenant because the condominium owners are bound by the covenant.

N.E. 181 (privity of estate exists between vendor and vendee); *McAnelly v. Graves* (1984), 126 Ill. App. 3d 528, 535-36, 467 N.E.2d 377), and between the mortgagor and the mortgagee of property. (*St. Paul Federal Bank*, 149 Ill. App. 3d at 1064; see also *Springer v. Darlington* (1904), 207 Ill. 238, 69 N.E. 946.) The Exchange National Bank obtained the property from the original lessor and covenantor. The owners of the condominium units, including the Heritage Bank, obtained their interests in the property from the Exchange National Bank. All of these parties are in privity of estate with Commercial because they took their interests from the original lessor and covenantor or from his successor, the Exchange National Bank.

We also note that plaintiff has accepted rentals from defendants for the use of the Premises. Plaintiff has thus received the benefit of the covenant to pay rent. Having accepted this benefit, plaintiff should allow Commercial to enjoy possession of the premises. See *Purvis v. Shuman* (1916), 273 Ill. 286, 298, 112 N.E. 679.

■ We conclude that the covenant at issue runs with the land and that Commercial is entitled to possession of the premises. (See *Louisville & Nashville R.R. Co. v. Illinois Central R.R. Co.* (1898), 174 Ill. 448, 453, 51 N.E. 824 (covenants of an agreement which invested the St. Louis and Southeastern Railway Company with an estate for years across the right of way of the appellee railroad company, and under which that railroad company was entitled to hold possession and covenanted to pay rent in consideration of such fact, are covenants that run with the land); see also *Dana Point Condominium Association, Inc. v. Keystone Service Co.* (1986), 141 Ill. App. 3d 916, 491 N.E.2d 63 (in an action filed by a condominium association, this court held that the terms of the lease between former owner of property and Keystone Service Co., for the rental of the laundry room, were not unconscionable and Keystone Service Co. was entitled to possession of the laundry room); *Bellows v. Ziv* (1962), 38 Ill. App. 2d 342, 187 N.E.2d 265 (this court observed that if the conveyance of the real estate was made either to the beneficiaries or to the American National Bank and Trust Company of Chicago, as trustee, by a third party owning the property, who had made a lease to the hotel, that lease would follow the fee simple conveyance).) We therefore affirm the entry of judgment in favor of defendants on count I of plaintiff's complaint.

■ We next consider the judgment entered in favor of defendants on count II of the complaint. Count II of the complaint is based upon the Statute of Frauds. In count II, plaintiff alleged that the leases were executed by agents of defendants who were not authorized in

writing to do so and the leases are within the Statute of Frauds. At trial, plaintiff elicited testimony from defendant S. Saul Silverstein that he did not have anything in writing authorizing the agents to enter into the leases on behalf of Commercial. However, it is established law that only the party being charged with a contract, lease or other obligation is entitled to invoke the Statute of Frauds. (See Ill. Rev. Stat. 1987, ch. 59, pars. 1, 2; *Pasquay v. Pasquay* (1908), 235 Ill. 48, 85 N.E. 316; *Hallberg v. Brosseau* (1896), 64 Ill. App. 520, 522 (in rejecting appellee's argument that lease was not signed by appellant or by an agent authorized in writing, court observed that the Statute of Frauds "is the personal privilege of the appellant only"); *Welsh v. Estate of Welsh* (1921), 148 Minn. 235, 181 N.W. 356 (the plaintiff could not invoke the Statute of Frauds for the defendant); *Peaslee Gaulbert Paint & Varnish Co. v. Lumpkin* (1960), 238 Miss. 637, 119 So.2d 772 (the Statute of Frauds is a right available to the party to an oral contract against whom enforcement is sought by the other party); 20 Ill. L. & Prac. *Statute of Frauds* §4 (1956); 73 Am. Jur. 2d *Statute of Frauds* §578 (1974).) It is for the party who is being charged to decide whether he or she will avail himself or herself of the defense of the Statute of Frauds of whether he or she will perform the oral contract, lease or other obligation. In the present case, plaintiff may not take advantage of the Statute of Frauds since it is not the party "charged" with the leases. We therefore conclude that the leases are enforceable and that the trial court properly entered judgment in favor of the defendants on count II of the complaint.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

FREEMAN, P.J., and McNAMARA,* J., concur.

---

*Justice McNamara participated in this opinion prior to his assignment to the sixth division.